UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
           :

ILLINOIS UNION INSURANCE COMPANY,   :    13-CV-2466 (ARR) (JO)
           :

        Plaintiff,        :    <u>NOT FOR ELECTRONIC</u>
           :    <u>OR PRINT PUBLICATION</u>

    -against-         :

           :    <u>OPINION & ORDER</u>

MIDWOOD LUMBER & MILLWORK, INC.; IGNATIUS :
REGIS; CLAYTON LABOARD; DEANNA ROSE   :
SIMMS, as Administratrix of the Estate of Winston Gillette; :
231 CARLTON AVENUE, LLC; BORO ARCHITECTS, :
LLC; KINGS MATERIAL CO., INC.; ALBANNA  :
ENGINEERING, P.C.; INTEGRITY CONSULTING :
SERVICES, INC.; S&B MASONRY CORP.; and  :
PROFESSIONAL GRADE CONSTRUCTION GROUP, :
INC.,           :
           :

        Defendants.    :
           :

------------------------------------------------------------------- X

ROSS, United States District Judge:

       This case arises out of an incident that occurred on September 10, 2012, at a construction

site located at 227 Carlton Avenue in Brooklyn, New York.  As a result of that incident, one

individual was killed and two others seriously injured.  Three separate lawsuits have been

brought in the Supreme Court of the State of York, Kings County, on behalf of the injured and

deceased individuals (the "Underlying Actions").  Plaintiff in this action, Illinois Union

Insurance Company ("Illinois Union"), is an insurance company seeking a declaratory judgment

that it has no obligation to defend or indemnify its insured, defendant Midwood Lumber &

Millwork, Inc. ("Midwood"), with respect to the Underlying Actions in which Midwood is

named as a defendant.  Illinois Union also seeks a declaration that the other defendants in this

action, who are also parties to the Underlying Actions, have no right to make any claims against

plaintiff under Midwood's policy with Illinois Union.

Plaintiff Illinois Union moves for summary judgment that there is no coverage as a matter of law. Defendant Midwood cross moves for summary judgment and argues that, even if there is no coverage, Illinois Union has waived its right to deny coverage pursuant to New York Insurance Law. For the reasons explained below, Illinois Union's motion is granted in part and denied in part, and Midwood's motion is denied.

## BACKGROUND

The following facts are drawn from the parties' submissions and, except as otherwise noted, are undisputed.

### A.     The Policy

Midwood is a retailer and wholesaler of lumber and construction materials. Aff. of David Motovich in Opp'n to Pl.'s Mot. for Summ. J. ("Motovich Aff."), Dkt. #53, Ex. 9, ¶ 2. Its business consists of a retail store, a yard, and offices, which occupy portions of certain locations on Coney Island Avenue and 1st Avenue in Brooklyn, New York. Id. According to Midwood's Vice President, David Motovich, "[d]elivering goods is an integral part of the regular operations of Midwood Lumber and the operation of booms, forklifts, cherry pickers and hand trucks are required in connection with Sales." Id. ¶ 3.

During the relevant period, Midwood had taken out an insurance policy for its business operations with plaintiff Illinois Union. Illinois Union issued General Commercial Liability policy number G2420893A002 to Midwood for the coverage period May 25, 2012, to May 25, 2013 (the "Policy"). Decl. of Eric D. Stuben in Supp. of Mot. for Summ. J. ("Stuben Decl."), Dkt. #50, Ex. A. The Policy begins with a document titled "Commercial General Liability Policy Declarations," which lists the policy number, the name of the insured, the policy period,

the insurer, the limits of insurance, and the premium.  Id. at ECF 4.  The document indicates the

premium rate and the value of the estimated exposure, which are both calculated based on sales

and square footage.  Id.  The document also refers to "Endorsements as Listed on Schedule of

Endorsements No. CPFS2."  Id.

The Policy includes a Forms Schedule CPFS2, which lists a number of forms primarily

titled as various declarations, limitations, endorsements, or exclusions.  Id. at ECF 8.  Listed on

the Forms Schedule are, inter alia, forms with the titles "Commercial General Liability Coverage

Form" and "Limitation of Coverage To Designated Premises or Project."  Id.

The "Commercial General Liability Coverage Form" begins with the statement:

"Various provisions in this policy restrict coverage.  Read the entire policy carefully to

determine rights, duties and what is and is not covered."  Id. at ECF 12.  The  form goes on to

state, in relevant part, in "Section I – Coverages":

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this insurance
> applies.  We will have the right and duty to defend the insured against any "suit"
> seeking those damages.  However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply. . . .
>
> . . .
>
> This insurance applies to "bodily injury" and "property damage" only if:  (1) The
> "bodily injury" or "property damage" is caused by an "occurrence" that takes
> place in the "coverage territory" . . . .

Id.  Further along, in "Section V – Definitions," the form defines the "coverage territory" as:

> a.  The United States of America (including its territories and possessions), Puerto
> Rico and Canada;

b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c.  All other parts of the world if the injury or damage arises out of:

> (1)  Goods or products made or sold by you in the territory described in Paragraph a. above;

> (2)  The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; . . .

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

Id. at ECF 24.

Also part of the Policy is a form titled "Limitation of Coverage to Designated Premises or Project" (hereinafter, the "Designated Premises Endorsement").  Id. at ECF 65.  At the top of the Designated Premises Endorsement, it states:  "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  Id.  It then states:  "This endorsement modifies insurance provided under" the "Commercial General Liability Coverage Part."  Id.  Under that language on the Designated Premises Endorsement is a schedule, which contains a list of the addresses for ten premises.  There is no dispute that 227 Carlton Avenue is not listed as one of the ten scheduled premises.  Below the schedule, the Designated Premises Endorsement states:

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:

> 1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

> 2.  The project shown in the Schedule.

Id.

**B.**     **The Underlying Actions and Illinois Union's Denial of Coverage**

This declaratory action seeking clarification of the rights and duties of the parties to the Policy described above arises out of the three Underlying Actions, which are personal injury lawsuits currently pending in the Supreme Court of the State of New York, Kings County.  Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts ("Illinois Union's Facts"), Dkt. #52, ¶ 5.  The plaintiffs in the Underlying Actions allege that on September 10, 2012, a roof collapsed at a construction site located at 227 Carlton Avenue in Brooklyn, New York (the events of September 10, 2012, hereinafter the "Occurrence").  Id. ¶ 6.  They allege that the Occurrence caused the death of Winston Gillette and injuries to the two other plaintiffs.  Def. Midwood's Local Rule 56.1 Counter Statement of Material Facts in Opp'n to Pl.'s Mot. for Summ. J. ("Midwood's Facts"), Dkt. #53, Ex. 8, ¶ 13.  The complaints in the Underlying Actions were filed in November and December of 2012[1], and Midwood is named as a defendant in all three. Compl., Dkt. #1, Exs. A-C.

During the course of discovery in the instant action, Midwood produced an invoice dated September 12, 2012, showing that it had been hired by defendant Professional Grade Construction Group Inc. ("Professional") to provide "boom service" on the morning of September 10, 2012, when the Occurrence occurred.  Stuben Decl., Ex. C.

Midwood has provided the court with a "General Liability Notice of Occurrence/Claim" form dated September 12, 2012.  Affirmation of Malvina Lin in Opp'n to Pl.'s Mot. for Summ. J.

---

[1] Clayton Laboard v. 231 Carlton Avenue, LLC, et al., No. 21547/2012 (the "Laboard Action"), was filed on November 7, 2012.  Compl., Ex. B.  Deanna Rose Simms v. 231 Carlton Avenue, LLC, et al., No. 22408/2012 (the "Gillette Action"), was filed on November 20, 2012.  Id., Ex. C.  Ignatius Regis v. 231 Carlton Avenue, LLC, et al., No. 23520/2012 (the "Regis Action"), was filed on December 11, 2012.  Id., Ex. A.

("Lin Aff. in Opp'n"), Dkt. #53, Ex. 1. The notice informed Illinois Union of the September 12 incident and described the Occurrence as follows:

> [Insured] boom truck made delivery of sand & block to a customer, Professional Grade Construction. Delivered to 3rd floor. Material made floor cave causing man to fall and die.
>
> The floor was not structurally stable and therefore it collapsed, killing one man and severely injuring another.

Id. The notice included the Policy number and listed the address of the occurrence as 227 Carlton Avenue, Brooklyn, New York. Id.

Midwood asserts that Illinois Union had full knowledge of the Occurrence and the location of the Occurrence, as well as full knowledge of the Policy's terms, shortly after the Occurrence, and in any event no later than September 19, 2012.[2] Lin Aff. in Opp'n ¶¶ 6-7. Illinois Union does not appear to contest that it had knowledge of these facts by September 19, 2012.

In any event, by letter dated September 19, 2012, assigned counsel informed Midwood that his firm, Ahmuty, Demers & McManus, had been retained by Illinois Union to represent Midwood in the Underlying Actions.[3] Id. ¶ 6.

According to Motovich, Midwood's Vice President, he made himself and Midwood's facilities available to the investigator who had been hired by Illinois Union to look into the

---

[2] In addition to the notice of claim, Midwood's counsel in the present action, Malvina Lin, relies in making these fact statements on certain other documents that she asserts are covered by privilege and that have only been disclosed to the court and to Illinois Union. For purposes of this opinion, the court does not rely on the documents themselves (or any of the other documents for which privilege is asserted) but only on the statements made by Lin in her affidavit, which is publicly available.

[3] In asserting this fact regarding the letter from assigned counsel to Midwood, Lin asserts that the letter itself is privileged and, accordingly, has been provided only to the court and Illinois Union. Again, for purposes of this opinion, the court does not rely on the letter itself but only on the statements made by Lin in her affidavit, which is publicly available.

Occurrence.  Motovich Aff. ¶ 10.  The investigator interviewed both Motovich and the driver

who was operating the boom at the time of the Occurrence.  Id.  According to Motovich,

Midwood did not hire an independent expert or conduct its own independent investigation into

the Occurrence in reliance on instructions from Illinois Union.  Id. ¶¶ 10-11. Also according to

Motovich, Midwood was directed not to communicate with anyone other than retained counsel

regarding the incident.  Id. ¶ 10.

        In an email dated October 11, 2012, assigned counsel forwarded to Illinois Union a copy

of the report from an investigator who had been hired to investigate the Occurrence.[4]  Lin Aff. in

Opp'n ¶ 8.  Assigned counsel confirmed the retainer of an engineering expert and informed

Illinois Union that the site of the Occurrence would be made available for inspection by an

engineering expert on October 16, 2012.  Id.

        According to email correspondence, Illinois Union internally began to evaluate possible

coverage issues sometime between March 11 and March 13, 2013.  Id. ¶ 9.  Email

communications indicate that someone from Illinois Union asked assigned counsel whether an

answer had been served in the Underlying Actions and noted that there might be coverage issues.

Id.  By email of March 19, 2013, Illinois Union instructed assigned counsel not to serve an

answer in the Regis Action, one of the three Underlying Actions.[5]  Id.

        By letter dated April 23, 2013, counsel for Illinois Union informed Midwood that it was

denying coverage with regard to the Underlying Actions.  Stuben Decl., Ex. D.  The letter stated

that Illinois Union was denying coverage on the basis that the incident at 227 Carlton Avenue did

---

[4] Privilege has been asserted for this document, and accordingly the court relies only on the statements made in the
Lin Affirmation that are available to all parties.
[5] Privilege has been asserted with regard to these emails, and the court relies only on the statements made in the Lin
affirmation, not on the documents themselves.

not take place on a "Designated Premises" scheduled in the Policy, and it stated that Illinois Union was reserving its right to deny coverage on the basis of an auto-related exclusion.  Id.  The letter informed Midwood that Illinois Union would be instituting the present action before this court  and that it would not indemnify Midwood in connection with the Underlying Actions.  Id. The letter stated that, pending the outcome of the declaratory action before this court, Illinois Union would continue to defend Midwood in the Underlying Actions but that it reserved the right to withdraw the defense and seek reimbursement for all amounts incurred by Illinois Union in defending Midwood in the Underlying Actions.  Id.  According to Motovich, Midwood had not received any notice that Illinois Union was reserving its rights to deny coverage or its obligation to defend Midwood prior to this letter.  Motovich Aff. ¶ 12.

In connection with its motion for summary judgment, Illinois Union has filed electronically accessed copies of the dockets for the Underlying Actions.  Stuben Decl., Ex. G. However, it is difficult to glean the specifics of the litigation status in the Underlying Actions from the documents provided.  According to Motovich, Midwood "has not participated in the litigation strategy [in the Underlying Actions] and has not had any say in the direction or control of the litigation."  Motovich Aff. ¶ 14.  Illinois Union asserts, and Midwood denies, that the actions are in their "very early stages."

C.    **The Instant Proceedings**

On April 23, 2013, the same day that Illinois Union informed Midwood by letter that it was denying coverage in the Underlying Actions, Illinois Union filed its complaint before this court seeking a declaration that it was under no obligation to defend or indemnify Midwood in the state court suits.  In connection with the filing of its answer to the complaint on June 17,

2013, Midwood asserted a number of affirmative defenses and made a counterclaim against Illinois Union alleging wrongful disclaimer of coverage and seeking a declaration that Illinois Union is obligated to defend and indemnify Midwood in the Underlying Actions.  Dkt. #13, ¶¶ 63-72.

Of particular importance to the motions currently before the court, Midwood asserted as an affirmative defense that Illinois Union's action for a declaration of non-coverage was barred by the insurer's "failure to comply with the timely disclaimer requirements set forth under New York Insurance Law § 3420."  Id. ¶ 58.  Midwood also asserted as an affirmative defense that Illinois Union was barred from denying coverage by the doctrine of equitable estoppel.  Id. ¶ 57.

Plaintiff Illinois Union moves for summary judgment on the grounds that it has no obligation to indemnify or defend Midwood in the Underlying Actions because (1) the Occurrence did not take place at a "Designated Premises" and (2) neither waiver nor estoppel principles apply to prevent Illinois Union from disclaiming coverage.  Defendants Midwood and Professional filed papers in opposition arguing that, even were the court to find that there is no coverage for the Underlying Actions under the Policy, Illinois Union has either waived its right to, or is estopped from, disclaiming coverage.  Midwood cross moves for summary judgment on the grounds that, even if there is no coverage under the policy, (1) the "Designated Premises" endorsement is an exclusion to coverage under the Policy and (2) Illinois Union unreasonably delayed in disclaiming coverage based on that exclusion, which prevents it from denying coverage under New York law.  Midwood also moves for an award of attorneys' fees.  Because the grounds for the parties' motions are inextricably linked, the court addresses both motions together.

**DISCUSSION**

**A.     Legal Standard for Summary Judgment**

Although the parties appear to agree that New York substantive law governs this action, federal procedural law provides the standard for summary judgment applicable to that action. Simoes v. Target Corp., No. 11 CV 2032(DRH)(WDW), 2013 WL 2948083, at *7 n.7 (E.D.N.Y. June 14, 2013); Casierra v. Target Corp., No. 09-CV-1301 (JG)(MDG), 2010 WL 2793778, at *1 (E.D.N.Y. July 12, 2010).  Under federal procedural law, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried.  Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 249 (1986).  "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law."  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits."  Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary

judgment by showing that little or no evidence may be found in support of the nonmoving

party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party

"must come forward with specific facts showing that there is a genuine issue for trial."

LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).  In reviewing the record before it, "the

court is required to resolve all ambiguities and draw all permissible factual inferences in favor of

the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130,

134 (2d Cir. 1997).

**B.      The Occurrence is Not Covered under the Plain Language of the Policy**

The first question that this court must address is whether the Policy covers the

Underlying Actions arising out of the Occurrence.  Illinois Union argues that the "Designated

Premises" endorsement defines the scope of coverage under the Policy and that, because 227

Carlton Avenue where the Occurrence took place is not a "Designated Premises," the Underlying

Actions are not covered under the Policy.  While Midwood does not concede that there is no

coverage, it devotes only limited consideration in its briefing papers to arguing that (1) because

its Policy premiums are based in part on sales, it would be illogical for the Policy not to cover

deliveries arising from those sales, and (2) the language of the "Designated Premises"

endorsement should be read to cover business related delivery trips away from the premises.  The

court agrees with Illinois Union that there is no coverage.

Under New York law, the ordinary rules of contractual interpretation apply to insurance

policy contracts.  Accessories Biz, Inc. v. Linda & Jay Keane, Inc., 533 F. Supp. 2d 381, 386

(S.D.N.Y. 2008).  "[A]n insurance contract is interpreted to give effect to the intent of the parties

as expressed in the clear language of the contract." <u>Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.</u>, 55 F.3d 114, 115 (2d Cir. 1995). Where the provisions are "clear and unambiguous," they must be enforced as written, <u>id.</u>, and given "their plain and ordinary meaning," <u>Accessories Biz</u>, 533 F. Supp. 2d at 386. Where, however, the policy language is ambiguous, "the court must interpret the language in context with regard to its purpose and effect in the policy and the apparent intent of the parties." <u>Id.</u> (internal quotation marks omitted). Only if the ambiguity remains unresolved, then it will be construed in favor of the insured. <u>Id.</u>

Under the Designated Premises Endorsement, the Policy applies only to "bodily injury" or "property damage" that arises out of the "ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." There is no dispute that the Occurrence did not take place on one of the premises listed on the schedule. Midwood argues that the off-site boom operations by its employee on the day of the Occurrence are covered as "operations necessary or incidental" to the sales from its business operations on the listed premises. This argument is unavailing because the clear language of the Policy limits coverage to operations that are "necessary or incidental" to the premises themselves. The court finds that, while the off-site boom operations may have been "necessary or incidental" to Midwood's business generally, it was not "necessary or incidental to those premises" listed on the schedule, and accordingly there is no coverage under the Policy's unambiguous language.

This reading of the Designated Premises Endorsement squares with the prevailing case law regarding commercial general liability policies. "[A] business liability policy generally covers only those risks which occur in and around the premises of the insured business." 9 Couch on Ins. § 126.8 (3d ed. 2013). This is particularly the case where an endorsement to the policy specifically limits coverage to designated premises and operations "necessary or

incidental to those premises," which conveys a principally spatial meaning. See Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., No. 07 Civ. 11211(DLC), 2008 WL 2464187, at *3 (S.D.N.Y. June 18, 2008) (finding it "clear that the phrase 'operations necessary or incidental to those premises' carries principally a spatial meaning, extending the premises listed in the schedules . . . to certain non-scheduled, appurtenant spaces 'necessary or incidental' to the enjoyment or use of the insured premises"); cf. Seneca Ins. Co., Inc. v. Cimran Co., Inc., 936 N.Y.S.2d 182 (App. Div. 2013) (finding that a construction accident on the fourth floor was not covered where, at the time that the insurance policy was entered into, the subject designated premises was a single-floor structure).

In Accessories Biz, Inc. v. Linda & Jay Keane, Inc., 533 F. Supp. 2d 381, the U.S. District Court for the Southern District of New York, applying New York law, found that substantially identical language in a policy endorsement effectively created a premises liability policy. The court held that, where the designated premises endorsement limits coverage to operations necessary or incidental to a business's premises located in Florida, there was no coverage for business-related activity occurring in New York at the business's showroom. Id. at 388-89. The court relied on the provision's clear language limiting coverage to operations "necessary or incidental" to the premises, as distinguished from operations necessary or incidental to the business.[6] Id.; see also Ten Seventy One Home Corp., 2008 WL 2464187, at *4 (refusing to find activities at off-site location to be "necessary or incidental" to designated

---

[6] In Accessories Biz, the court expressed concern that an extension of coverage to operations necessary or incidental to the business, as opposed to the premises themselves, would increase the insurer's exposure to risk which was not intended or included in the calculation of the premium. Id. at 389. That concern is no less relevant here where premiums were based on a combination of square footage and sales volume. Although off-site delivery and boom operations may be incidental to sales, it is the sales themselves that are taken into account in the premiums. Off-site delivery incidental to sales is one step further removed from the premises themselves, and therefore outside the covered exposure relating to use and enjoyment of the premises.

premises simply because they were business-related and involved an employee engaged in business activities).

The schedule to the Designated Premises Endorsement lists ten enumerated premises, and 227 Carlton Avenue is not one of them. Although the boom operations provided by Midwood at 227 Carlton Avenue on the day of the Occurrence were not as far removed from the relevant premises as the activities at issue in Accessories Biz, the boom operations, like the activities at issue in Accessories Biz, did not take place on a space appurtenant or spacially related to the scheduled designated premises. Furthermore, while the boom operations may have been incidental to Midwood's business, it was in no way incidental to the enjoyment, use or maintenance of the scheduled premises themselves. Therefore, coverage does not extend to those off-site operations giving rise to the Occurrence and the Underlying Actions.

De Forte v. Allstate Insurance Company, 442 N.Y.S.2d 307 (App. Div. 1981), on which Midwood relies, is wholly inapposite to the Policy in this case. The endorsement discussed in De Forte covered "all operations necessary or incidental to the business of the Named Insured conducted at or from the insured premises." Id. at 309 (emphasis added). The provision in De Forte is, therefore, altogether distinguishable from the Designated Premises Endorsement at issue here, which covers only those operations necessary or incidental to the premises themselves, not to the business conducted from those premises. See AMCC Corp. v. Ill. Nat'l Ins. Co., 784 N.Y.S.2d 512 (App. Div. 2004) (distinguishing the provision in De Forte because it specifically "allowed for coverage of off-premises occurrences"). Here, the limitation to the premises themselves is clear.

Furthermore, the broad "coverage territory" provision in the Policy does not render the limitation of coverage under the Designated Premises Endorsement ambiguous. See Richner Commc'ns, Inc. v. Tower Ins. Co. of N.Y., 898 N.Y.S.2d 615, 617 (App. Div. 2010) (construing substantially identical provisions). Such "coverage territory" language does not extend coverage to business related activities anywhere in the United States but merely indicates that the Policy applies "to any scheduled premises or 'operations necessary or incidental to those premises,' no matter where in the United States such premises exist." Ten Seventy One Home Corp., 2008 WL 2464187, at *4.

Because the Policy's provisions are unambiguous, the court need not look to any extrinsic evidence that Midwood invites it to consider in determining whether there is coverage under the Policy. The court does not consider, inter alia, the statements in the Motovich Affidavit regarding the relationship between deliveries and sales because, under the unambiguous language of the Premises Endorsement, the Policy does not cover off-site occurrences.

Accordingly, there is no genuine issue of material fact that, under the plain language of the Designated Premises Endorsement, the Occurrence at 227 Carlton Avenue is not covered under the Policy.

C.      **N.Y. Insurance Law § 3420(d)(2) Does Not Apply**

Midwood argues that, even if there is no coverage under the Policy, it is nonetheless entitled to summary judgment on the grounds that Illinois Union failed to timely disclaim coverage under N.Y. Insurance Law § 3420(d)(2) and as a result waived its right to disclaim coverage based on the Designated Premises Endorsement.[7] However, in light of the case law

_____

[7] In its brief opposing Illinois Union's motion for summary judgment, Professional also argues for the application of

15

interpreting § 3420(d)(2), it is clear that the statute does not apply to this case, regardless of the amount of time that passed between notification of the claim and Illinois Union's disclaimer.

According to § 3420(d)(2),

> [i]f under a liability policy issued or delivered in [New York], an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within [New York], it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

Where it applies, § 3420(d)(2) operates as a waiver by the insurer of its right to disclaim coverage. "If the insurance carrier fails to disclaim coverage in a timely manner, it is precluded from later successfully disclaiming coverage." NGM Ins. Co. v. Blakely Pumping, Inc., 593 F.3d 150, 153 (2d Cir. 2010).

In interpreting the former N.Y. Insurance Law § 167(8), now § 3420(d)(2), in the seminal case of Zappone v. Home Insurance Company, 432 N.E.2d 783 (N.Y. 1982), the New York Court of Appeals affirmed an Appellate Division ruling which construed the statutory language "denial of coverage" to apply only "to those instances in which insurance covering the event could be said to exist but for some nonpayment of premiums, cancellation, or other exclusion that would arguably defeat such coverage." Zappone v. Home Ins. Co., 436 N.Y.S.2d 402, 404 (App. Div. 1981). According to the Court of Appeals in Zappone, "the Legislature in using the words 'denial of coverage' did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an exclusion in the policy." 432 N.E.2d at 787. Zappone thus created a distinction between cases where there

---

§ 3420(d)(2).

would be coverage under a policy but for the application of an exclusion (an "exclusion of coverage"), in which case § 3420(d)(2) would apply, and cases where there was no coverage under the policy from the outset (a "lack of coverage"), in which case the statute would not apply.[8] The New York Court of Appeals has subsequently reaffirmed this distinction between an exclusion of coverage and a lack of coverage in analyzing whether an insurer must timely disclaim under § 3420(d)(2). E.g., Worcester Ins. Co. v. Bettenhauser, 734 N.E.2d 745, 748 (N.Y. 2000); Handelsman v. Sea Ins. Co. Ltd., 647 N.E.2d 1258, 1259 (N.Y. 1994). Although finding that the provision at issue in Bettenhauser was an exclusion, the Court of Appeals stated:

> Disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.

734 N.E.2d at 747.

At issue here is whether the Designated Premises Endorsement creates an exclusion of coverage or whether it defines the scope of coverage such that there is a lack of coverage for an off-site occurrence from the outset. As the New York Court of Appeals noted in Bettenhauser, distinguishing between an exclusion and a lack of coverage can be "problematic." Id. According to defendants, the Designated Premises Endorsement should be construed as an exclusion because it places a limitation on what would otherwise be broad coverage language. Specifically, defendants ask the court to place emphasis on the Designated Premises

---

[8] In Zappone, the Appellate Division considered a provision limiting coverage to an automobile that was either an "owned automobile" or a "non-owned automobile." Id. at 403. The court held that the limitation defined the scope of coverage and that, because the car at issue did not fall within the definition of either an "owned automobile" or a "non-owned automobile" under the policy, there was no coverage of the car from the outset. Id. at 404. Accordingly, the Appellate Division held that § 3420(d)(2) did not apply to prevent the insurer from disclaiming coverage, despite a fifteen-month delay between the insurer's learning of the relevant facts regarding the claim and its disclaimer of coverage.

Endorsement language that it is a "limitation" that "changes the policy" and "modifies" the insurance provided. However, the New York Court of Appeals has indicated that it is the effect of a provision rather than its denomination that prevails for purposes of determining whether it is an exclusion. See Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc., 553 N.E.2d 562, 564 (N.Y. 1990) (finding that limiting language created an exclusion even though it was located in the definition of coverage and not in the exclusions section). Furthermore, even looking to the labelling of the endorsement in the context of the Policy, it is not clear that the language weighs in favor of interpreting it as an exclusion. The general coverage languages states that Illinois Union will indemnify and defend Midwood against damages arising out of "'bodily injury' or 'property damage' to which this insurance applies," and the endorsement states that "[t]his insurance applies only to" designated premises.

More helpful is the approach taken in Planet Insurance Company v. Bright Bay Classic Vehicles, Inc., which looked to the effect of the provision. Id. at 564-65. In that case, the insured had obtained a policy to cover its fleet of rental cars, and the policy defined "covered rental cars" as those rented for a period of less than twelve months. Id. at 563. The New York Court of Appeals found that the provision limiting the definition of "covered rental cars" to a period of less than twelve months operated as an exclusion because a rental car that was initially covered by the policy would only become "'uncovered' upon the happening of a subsequent event: i.e., the rental . . . for a lease period other than that prescribed in the policy." Id. at 565. It was thus the fact that the provision's effect was to "uncover" an occurrence that would otherwise have been covered that made it an exclusion.

Relying on the reasoning in Planet, the Second Circuit in NGM Insurance Company v. Blakely Pumping, Inc. found that an endorsement providing coverage only for a "hired auto" or a

"non-owned auto" defined the scope of coverage and was not an exclusion. 593 F.3d at 153-54. The Second Circuit found that the policy did not cover auto accidents generally but only those accidents arising from the use of a "hired auto" or "non-owned auto" as defined in the policy. Id. at 154. It was not the case that a car that had been formerly covered was somehow uncovered but rather "the policy as written could not have covered the liability in question under any circumstances." Id. (quoting Zappone, 432 N.E.2d at 785).

In Max Specialty Insurance Company v. WSG Investors, LLC, a magistrate judge in this district applied the reasoning from Planet and NGM to facts closer to those here. No. 09-CV-5237 (CBA)(JMA), 2012 WL 3150579 (E.D.N.Y. Apr. 20, 2012), adopted by 2012 WL 3150577 (E.D.N.Y. Aug. 2, 2012). In that case, the broad general coverage language was almost identical to that found in the Policy here. The policy in that case stated: "[The Insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at *6. The policy in Max Specialty also contained a "Limitation to Designated Class Endorsement" which stated that "[t]his insurance applies only to [damages] arising out of only those operations designated, listed and described in the declarations page." Id. (alterations in original). Only two types of operations were scheduled as designated classes: interior carpentry and drywall and wall board installation. Id. The magistrate judge found, and the district judge agreed, that the endorsement limiting coverage to certain classes of activities defined the scope of coverage because "as in NGM, the happening of a subsequent event did not uncover activities that were originally covered---the policy was defined such that [the insured's] exterior construction activities giving rise to [the injured party's] fall from the scaffold were never covered under the policy in the first place." Id. Crucially, Judge Amon determined that, looking at the policy as a whole, "[t]he policy [did] not

generally cover [the insured's] business operations; it [was] written to cover only those business operations in the areas" designated by the endorsement. 2012 WL 3150577, at *3.

The reasoning applied in <u>Max Specialty</u> is equally applicable to the Designated Premises Endorsement in this case. Looking at the Policy as a whole, it is clear that the Policy as written covered only the "ownership, maintenance or use" of the scheduled premises and "operations necessary or incidental to those premises." The Designated Premises Endorsement does not operate as an exclusion because its effect is not to somehow "uncover" the happening of off-site accidents that would have initially been covered under the Policy. It is clear that the Designated Premises Endorsement defines the scope of coverage, and it is only accidents occurring within the scope of the endorsement that are covered in the first place.[9] The off-site Occurrence giving rise to the Underlying Actions was simply never within the scope of the Policy's coverage.

Accordingly, there is no genuine issue of material fact that the Designated Premises Endorsement is not a Policy exclusion for which Illinois Union was obliged to timely disclaim coverage under § 3420(d)(2). Because there was never coverage under the Policy, Illinois Union cannot be said to have waived its right to disclaim. Therefore, Midwood's motion for summary judgment is denied, and its related request for an award of attorneys' fees must be denied.

**D.**     <u>**A genuine issue of material fact exists as to whether equitable estoppel applies.**</u>

Defendants also oppose Illinois Union's motion for summary judgment by arguing that, even if Illinois Union did not waive its right to disclaim under § 3420(d)(2), the doctrine of equitable estoppel may still apply to prevent Illinois Union from disclaiming any obligations to

---

[9] To find otherwise would lead to absurd results. The Policy as written was certainly not intended to apply to any accident occurring anywhere in the United States (i.e. the "coverage territory"), or if it were the risk assessment and premium calculation would not have been based on the sales and square footage at limited locations.

indemnify and defend Midwood.[10]  Defendants base their equitable estoppel theory on their argument that Illinois Union effectively controlled the defense of the Underlying Actions from September 2012 until it disclaimed coverage in April 2013.  The court agrees with defendants that there are genuine issues of material fact as to whether equitable estoppel applies, and summary judgment is not appropriate.

Although New York Insurance Law § 3420(d)(2) cannot be used to create coverage where it does not otherwise exist, an insurer who assumes an insured's defense without any reservation of its rights to disclaim may still "be estopped 'from denying or disclaiming coverage where the proper defending party relied to its detriment on that coverage and was prejudiced by the delay of the insurance company in denying or disclaiming coverage based on the loss of the right to control its own defense.'"  Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 931 N.Y.S.2d 18, 20 (App. Div. 2011) (quoting Liberty Ins. Underwriters, Inc. v. Arch Ins. Co., 877 N.Y.S.2d 44 (App. Div. 2009)); see also Schneider v. Canal Ins. Co., No. 98-CV-5368(JG), 1999 WL 689476, at *13 n.17 (E.D.N.Y. Sept. 1, 1999) (collecting cases considering whether equitable estoppel may be applied in non-coverage cases where § 3420(d)(2) does not apply). Unlike § 3420(d)(2), which prevents an insurer from disclaiming its obligations under a policy, equitable estoppel in this context may operate to create obligations, which are independent of the insurer's coverage obligations under the policy, based on the conduct of the insurer on which an insured relies.  This is a widely acknowledged exception to the general rule that estoppel cannot be used to create coverage where it would not otherwise exist.  See 7 Couch on Ins. § 101:9 (3d ed. 2013).

---

[10] The court notes that the defendants raise this argument only in opposition to Illinois Union's motion.  Midwood does not raise equitable estoppel as a grounds for summary judgment in its own motion.

"[A]n insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." Bluestein & Sander v. Chi. Ins. Co., 276 F.3d 119, 122 (2d Cir. 2002). An unreasonable delay in disclaiming coverage without making any reservation of rights effectively operates as a representation by the insurer that it will provide a defense and coverage. "The reasonableness of any delay is 'judged from the time that the insurer is aware of sufficient facts to issue a disclaimer.'" Id. (quoting Mt. Vernon Fire Ins. Co. v. Unjar, 575 N.Y.S.2d 694, 696 (App. Div. 1991)). Here, there is little dispute that Illinois Union had knowledge of the basis for a disclaimer by the end of September 2012 but did not did notify Midwood of its disclaimer until late April 2013, at least seven months later.[11] In other cases, similar periods of unexplained delay have been held to be unreasonable as a matter of law. E.g., Adams v. Chi. Ins. Co., 49 F. App'x 346, 349 (2d Cir. 2002) (eight months); Bluestein, 276 F.3d at 122 (nine months); Hartford Ins. Co. v. Cnty. of Nassau, 389 N.E.2d 1061, 1062 (N.Y. 1979) (two months); U.S. Fid. & Guar. Co. v. Weiri, 696 N.Y.S.2d 200, 201 (App. Div. 1999) (almost six months); Inc. Vill. of Pleasantville v. Calvert Ins. Co., 612 N.Y.S.2d 441, 443 (App. Div. 1994) (eight months).

However, even if Illinois Union unreasonably delayed in disclaiming coverage, defendants must demonstrate that Midwood suffered prejudice as a result of that delay, which is typically a question of fact. Adams, 49 F. App'x at 349 (citing Greater N.Y. Sav. Bank v. Travelers Ins. Co., 570 N.Y.S.2d 122, 123 (App. Div. 1991)). In the insurance context, equitable estoppel "has as its basis the detrimental reliance suffered by the insured . . . As such, an estoppel

---

[11] An insurer bears the burden of proving that any delay was reasonable, and a delay will generally be considered unreasonable as a matter of law where the insurer offers no explanation for its delay. Mt. Vernon Fire Ins. Co. v. J.J.C. Stucco & Carpentry Corp., No. 95-CV-5202, 1997 WL 177864, at *3 (E.D.N.Y. Apr. 3, 1997).

will lie only if the insured has demonstrated that it has been prejudiced by the insurance carrier's actions." Phila. Indem. Ins. Co. v. City of N.Y., No. 09 Civ. 10432(PGG), 2011 WL 1237586, at *7 (S.D.N.Y. Mar. 24, 2011) (quoting Nat'l Indem. Co. v. Ryder Truck Rental, Inc., 646 N.Y.S.2d 169 (App. Div. 1996)). In recent cases, the New York courts have explicitly rejected the premise that there is a presumption of prejudice where the insurer assumes control of the insured's defense and have held that "[p]rejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 807 N.Y.S.2d 62, 68 (App. Div. 2006); accord Yoda, 931 N.Y.S.2d at 21 (applying estoppel where, due to untimely disclaimer, insured did not timely implead another party and allowed its file to become inactive); see also Phila. Indem. Ins. Co., 2011 WL 1237586, at *8 (refusing to apply estoppel where insureds argued that they were prejudiced by mere loss of control of their defense where insurer's chosen counsel represented them for eight months prior to disclaimer). "[T]he [New York] Court of Appeals has only found estoppel in cases where, by the time the insurer attempted to avoid liability under the policy, the underlying litigation against the insured had reached a point where the course of the litigation had been fully charted." 206-208 Main St. Assocs., Inc. v. Arch Ins. Co., 965 N.Y.S.2d 31, 34 (App Div. 2013).[12]

Defendants argue principally that prejudice exists by virtue of the fact that Illinois Union's assumption of Midwood's defense denied Midwood the right to control its own defense.

_____

[12] Compare 206-208 Main St. Assocs., 965 N.Y.S.2d at 35 (no estoppel where insured admitted litigation was in "early phase"), Federated Dep't Stores, 807 N.Y.S.2d at 68 (no estoppel where no indication that insurer controlled defense), and O'Dowd v. Am. Sur. Co. of N.Y., 144 N.E.2d 359, 363 (N.Y. 1957) (no summary judgment of estoppel where disclaimer two years prior to trial absent further evidence of prejudice) with Brooklyn Hosp. Ctr. v. Centennial Ins. Co., 685 N.Y.S.2d 267 (App. Div. 1999) (estoppel where already on trial calendar), U.S. Fid. & Guar. Co. v. N.Y. Susquehanna & W. Ry. Corp., 713 N.Y.S.2d 624, 625-26 (App. Div. 2000) (estoppel where disclaimer six days before trial and on eve of settlement), Hartford Ins. Grp. v. Mello, 437 N.Y.S.2d 433, 435 (App. Div. 1981) (estoppel where two-year delay and already on trial calendar), and Gerka v. Fid. & Cas. Co., 167 N.E. 169 (N.Y. 1929) (estoppel where insurer defended insured through trial, appeal and settlement).

Midwood also argues that engineering and structural investigation of the construction site were essential to the proper defense of the Underlying Actions and that Illinois Union not only assigned counsel but also hired the investigator and structural engineer who conducted the investigation of the construction site. According to Midwood, Illinois Union controlled the investigation at the construction site, and now that the site has been repaired and completed it is impossible for Midwood to go back and conduct its own investigation. Midwood does not assert that the construction investigation was in any way inadequate.

Illinois Union, pointing to the dockets for the Underlying Actions, counters that they are in their "very early stages" and that no prejudice could yet have occurred. In response, defendants assert that the Underlying Actions are beyond the early stages because they have been pending for over a year and there has been substantial motion practice, including motions for default judgment. Midwood also asserts that Illinois Union instructed the assigned counsel that it had retained to represent Midwood not to file an answer in one of the Underlying Actions almost a month before it notified Midwood that it was disclaiming coverage. Although it does appear from the dockets for the Underlying Actions that motions for default were brought after the disclaimer in April 2013 (and thus beyond the relevant period for determining prejudice), the dockets do not provide a very fulsome description of what has happened in the Underlying Actions or their current status.

Because the question of the existence of prejudice requires a highly fact-sensitive analysis, it is not one that can be determined on the record presently before the court. Although defendants cannot simply rely on a presumption that Midwood is prejudiced by the mere fact of Illinois Union assuming its defense, defendants have submitted additional facts raising a question as to whether Midwood was prejudiced in its defense of the Underlying Actions. These include,

inter alia, the allegations that Midwood may not be able to do any independent investigation of the accident site now that it has been repaired and that there have been some default judgments entered against Midwood in the Underlying Actions (although exactly what has occurred is not clear to the court at this time).

Because genuine issues of material fact as to prejudice remain and estoppel may be warranted, summary judgment is denied on this ground. The parties shall conduct further discovery on this issue and may renew motions at the conclusion of that discovery.

## CONCLUSION

For the reasons explained above, Illinois Union's motion for summary judgment is granted in part and denied in part. Although there is no genuine issue of material fact that the Occurrence giving rise to the Underlying Actions is not covered by the Policy, genuine fact issues remain as to whether Illinois Union may be equitably estopped from disclaimer. Midwood's motion for summary judgment is denied, as there is no genuine issue of material fact that New York Insurance Law § 3420(d)(2) does not control in this case, and its related motion for attorneys' fees is denied at this time. The parties shall conduct further discovery on the issue of prejudice and whether equitable estoppel is appropriate. The parties may submit renewed motions after completion of that discovery.

SO ORDERED.

_/s/_____
Allyne R. Ross
United States District Judge

Dated:        February 18, 2014
              Brooklyn, New York