UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ILLINOIS UNION INSURANCE COMPANY,

                    Plaintiff,                **MEMORANDUM & ORDER**
                                                   13-CV-2466 (MKB)

        v.

MIDWOOD LUMBER & MILLWORK, INC.,
IGNATIUS REGIS, CLAYTON LABOARD,
DEANNA ROSE SIMMS, as Administratrix of the
Estate of Winston Gillette, 231 CARLTON
AVENUE, LLC, BORO ARCHITECTS, LLC,
KINGS MATERIAL CO., INC., ALBANNA
ENGINEERING, P.C., INTEGRITY CONSULTING
SERVICES, INC., S&B MASONRY CORP. and
PROFESSIONAL GRADE CONSTRUCTION
GROUP, INC.,

                    Defendants.

---------------------------------------------------------------

MIDWOOD LUMBER & MILL WORK, INC.,

               Third-Party Plaintiff,

        v.

ALL RISK BROKERAGE CO., INC.,

               Third-Party Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      On April 23, 2013, Plaintiff Illinois Union Insurance Company ("Illinois Union")

commenced the above-captioned declaratory judgment action against Defendants Midwood

Lumber & Millwork, Inc. ("Midwood"), Ignatius Regis, Clayton Laboard, Deanna Rose Simms

as administratrix of the estate of Winston Gillette, 231 Carlton Avenue, LLC, Boro Architects,

LLC, Kings Material Co., Inc., Albanna Engineering, P.C., Integrity Consulting Services, Inc., S&B Masonry Corp. and Professional Grade Construction Group, Inc. (Compl., Docket Entry No. 1.) Illinois Union seeks a declaratory judgment: (1) that it has no obligation to defend or indemnify Midwood with respect to three lawsuits that are being litigated in the Supreme Court of the State of New York, Kings County (the "Underlying Actions"),[1] in which Midwood has been named as a defendant; and (2) that the remaining Defendants in this action, who are parties to the Underlying Actions, have no right to make any claims against Illinois Union pursuant to Midwood's insurance policy with Illinois Union. (*Id.*) On September 26, 2014, Midwood filed a third-party complaint against All Risk Brokerage Co., Inc. ("All Risk"), Midwood's insurance broker. (Third-party Compl., Docket Entry No. 81.) As described in further detail below, currently before the Court are Illinois Union's motion for summary judgment and cross-motions by Midwood and All Risk for partial summary judgment. For the reasons discussed below, the Court grants in part and denies in part Illinois Union's motion for summary judgment and denies the cross-motions by Midwood and All Risk.

## I. Background

Illinois Union brings this action because it claims that it has no obligation to defend or indemnify Midwood based on an addendum to Midwood's insurance policy, entitled "Limitation of Coverage to Designated Premises or Project" (the "Designated Premises Endorsement"), which precludes coverage and, in addition, because the incident from which the Underlying Actions arose involved the use of an automobile, also not covered by Midwood's insurance policy. (Compl. ¶¶ 33–45.)

---

[1] The Underlying Actions are: *Regis v. 231 Carlton Avenue, LLC*, No. 23520/2012 (N.Y. Sup. Ct. filed Dec. 11, 2012), *Simms v. 231 Carlton Avenue, LLC*, No. 22408/2012 (N.Y. Sup. Ct. filed Nov. 20, 2012), and *Laboard v. 231 Carlton Avenue, LLC*, No. 21547/2012 (N.Y. Sup. Ct. filed Nov. 7, 2012).

On December 23, 2013, Illinois Union moved for summary judgment as to its claim that the Midwood insurance policy precluded coverage as a matter of law, and Midwood cross-moved for summary judgment on the grounds that the incident that gave rise to the Underlying Actions was covered by the 2012 Policy. *Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-CV-2466, 2014 WL 639420, at *1 (E.D.N.Y. Feb. 18, 2014).

By Opinion and Order dated February 18, 2014, Judge Allyne R. Ross granted in part and denied in part Illinois Union's motion for summary judgment and denied Midwood's motion for summary judgment[2] (the "2014 Decision"). *Id.* Judge Ross determined that based on the plain language of the Midwood insurance policy, Illinois Union had no obligation to defend or indemnify Midwood with respect to the Underlying Actions because the Designated Premises Endorsement limited Midwood's insurance coverage to certain designated premises. *Id.* at *7–8. Because the incident that gave rise to the Underlying Actions occurred on premises that were not listed on the Designated Premises Endorsement, Illinois Union was not obligated by the Midwood insurance policy to defend or indemnify Midwood. *Id.* at *8.

Judge Ross found, however, that Illinois Union's seven-month delay in disclaiming coverage was unreasonable as a matter of law. *Id.* at *12. Judge Ross also found that there was a genuine issue of material fact as to whether Midwood was prejudiced by Illinois Union's unreasonable delay, thereby equitably estopping Illinois Union from denying or disclaiming coverage. *Id.* at *14. Based on this genuine issue of material fact, Judge Ross denied Illinois Union's summary judgment motion as to Midwood's equitable estoppel counterclaim and directed the parties to "conduct further discovery on this issue and . . . renew motions at the conclusion of that discovery." *Id.* at *14.

---

[2]  The case was reassigned to this Court on April 11, 2016.  (Order dated Apr. 11, 2016.)

After engaging in further discovery, Illinois Union, Midwood and All Risk now move for relief. Midwood argues that Illinois Union's delay in disclaiming coverage has prejudiced Midwood and that equitable estoppel therefore operates to prevent Illinois Union from not defending it in the Underlying actions. (Midwood Mem. of Law in Opp'n ("Midwood Opp'n") 3, Docket Entry No. 147.)

Midwood also seeks partial summary judgment based on its counterclaim that the policy must be reformed to exclude the Designated Premises Endorsement because its inclusion in the policy was either a mutual mistake or a fraudulently induced unilateral mistake. (*Id.* at 1.)

In addition, Midwood and All Risk alternatively move for partial summary judgment to dismiss Illinois Union's claim that it has no obligation to defend or indemnify Midwood based on the terms in the Designated Premises Endorsement. (Midwood Mot. for Partial Summ. J., Docket Entry No. 145; All Risk Mot. for Partial Summ. J., Docket Entry No. 148.) Midwood and All Risk argue that because the Designated Premises Endorsement is neither included in the quote nor the binder that they received in advance of the policy, the parties never agreed to include the Designated Premises Endorsement in the 2012 Policy, and that the Designated Premises Endorsement is therefore not a part of Midwood's insurance policy and does not relieve Illinois Union's from its obligation to defend or indemnify Midwood in the Underlying Actions. (Midwood Mem. of Law ("Midwood Mem.") 1, 19–20, Docket Entry No. 145-22; All Risk Mem. of Law ("All Risk Mem.") 6, 15, 22–23, Docket Entry No. 148-36.) Midwood also argues that, despite Judge Ross's determination that the Designated Premises Endorsement precludes insurance coverage, the Court may consider this motion either (1) because Judge Ross did not consider the issue of whether the Designated Premises Endorsement was "properly included" in the policy, and thus the law-of-the-case doctrine does not preclude this argument, or (2) because

new evidence and the avoidance of "manifest injustice" provide a basis to reconsider the 2014 Decision. (Midwood Mem. 15–18.)

For its part, Illinois Union moves for summary judgment as to Midwood's equitable estoppel counterclaim, arguing that Midwood cannot show that the delay in disclaiming coverage caused prejudice to Midwood, and the Court should therefore not apply equitable estoppel, and it also cross-moves for summary judgment as to Midwood's reformation counterclaim.[3] (Illinois Union Mot. for Summ. J., Docket Entry No. 135; Illinois Union Mem. of Law ("Illinois Union Mem.") 1–2, Docket Entry No. 135-1.)

Because the facts are set forth in detail in the 2014 Decision, *Ill. Union Ins.*, 2014 WL 639420, at *1–3, the Court provides only a summary of the pertinent facts. The Court also provides the additional facts resulting from the discovery engaged in by the parties after the 2014 Decision.

### a. Summary of underlying facts

Midwood operates a retail and wholesale lumberyard located at 1169 Coney Island Avenue, Brooklyn, New York.[4] (Midwood's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Midwood 56.1") ¶ 1, Docket Entry No. 145-23; All Risk's Local Rule 56.1 Statement of Facts ("All Risk 56.1") ¶ 4, Docket Entry No. 148-4.) A "significant" portion of Midwood's business includes delivering and unloading construction materials and equipment outside of its lumberyard location. (Midwood 56.1 ¶ 2.) All Risk is an insurance broker hired by Midwood to procure insurance coverage on Midwood's behalf. (*Id.* ¶ 3; All Risk 56.1 ¶ 7.)

---

[3] No party has moved for summary judgment with respect to Illinois Union's claim that it has no obligation to defend or indemnify Midwood because the Incident involved the use of an automobile, for which Midwood's insurance policy does not provide coverage.

[4] The facts are undisputed unless otherwise noted.

Illinois Union is an insurance company that provides insurance in New York. (All Risk 56.1 ¶¶ 1–2.) Partners Specialty Group ("Partners Specialty"), a wholesale broker, acted as an intermediary between All Risk and Illinois Union. (Midwood 56.1 ¶¶ 8–9; All Risk 56.1 ¶¶ 18–19.)

All Risk obtained two general commercial liability insurance policies from Illinois Union on Midwood's behalf, one in 2011 with a coverage period from May 25, 2011 through May 26, 2012 (the "2011 Policy"), and the other in 2012 with a coverage period from May 26, 2012 through May 25, 2013 (the "2012 Policy"), which is the pertinent policy at issue (collectively the "Policies").[5] (Midwood 56.1 ¶ 8–9; 2011 Policy, Docket Entry No. 135-11; 2012 Policy, Docket Entry No. 135-15.)

### i. The 2011 Policy

Midwood applied for the 2011 Policy on March 23, 2011 (the "2011 Application"). (Midwood 56.1 ¶ 10; 2011 Application, Docket Entry No. 148-6.) The 2011 Application listed as the named insureds Midwood and ten limited liability companies. (2011 Application 3.) The 2011 Application sought insurance for Midwood's business operations at ten different premises, (*id.* at 1–2), with varying levels of insurance coverage, (*id.* at 6–7).

Illinois Union provided a quote for general commercial liability insurance, including pricing and proposed terms (the "2011 Quote"). (2011 Quote, Docket Entry No. 148-7.) The 2011 Quote listed Midwood as the only named insured and included the policy period, the insurance coverage limits, the deductible, the premium and the estimated exposure. (*Id.* at 1.) Under "additional terms and conditions," the quote listed the titles of twenty-eight forms,

---

[5] In negotiating the Policies, neither Midwood nor All Risk communicated directly with Illinois Union. (All Risk 56.1 ¶¶ 16–17.) Instead, Partners Specialty acted as an intermediary between All Risk and Illinois Union. (Midwood 56.1 ¶¶ 8–9; All Risk 56.1 ¶¶ 18–19.

endorsements and exclusions that would be included in the final policy. (*Id.* at 2.) Based on the 2011 Quote, Midwood paid the advance premium, (Midwood 56.1 ¶ 16), and Illinois Union issued a binder the same day with the same material terms as the 2011 Quote and the same additional terms and conditions to be added to the final policy (the "2011 Binder"), (2011 Binder, Docket Entry No. 148-9). The Designated Premises Endorsement was not listed on either the 2011 Quote or the 2011 Binder as an additional term and condition to be included in the policy. (*See* 2011 Quote at 2–3; 2011 Binder at 2.)

After Illinois Union issued the 2011 Binder, the parties continued to negotiate about the inclusion of the limited liability companies as named insureds in the policy. Based on the 2011 Application, Illinois Union understood that for the limited liability companies whose names corresponded with the premises that were listed on the 2011 Application, Midwood was seeking only "lessor's risk coverage," as opposed to general commercial liability coverage, because the business activities of the limited liability companies consisted only of owning and leasing the premises for which they were named. (Emails from James Williams dated May 25–26, 2011 ("Williams 2011 Emails") at 4, Docket Entry No. 135-9.) Because Midwood sought coverage for two limited liability companies that did not correspond to premises listed on the 2011 Application, Illinois Union agreed to extend coverage to those companies as well — thereby covering all of Midwood's proposed entities under the 2011 Policy — if Midwood agreed to add "CG 21 44 Limitation of Coverage to Scheduled locations" to the insurance policy.[6] (*Id.* at 1.) Partners Specialty forwarded Illinois Union's proposal to All Risk, and All Risk agreed to add the

---

[6] The parties do not dispute that the form Williams referenced in his email as "CG 21 44 Limitation of Coverage Scheduled to these premises/locations," (Williams 2011 Emails 1), is the Designated Premises Endorsement, which is entitled "Limitation of Coverage to Designated Premises or Project" and has an identifying code of CG 21 44, (2011 Policy at 65).

Designated Premises Limitation.  (Emails from Karen Bohrer dated May 25–26, 2011 ("Bohrer Emails") at 1, Docket Entry No. 148-11.)

On June 2, 2011, Illinois Union issued the 2011 Policy, which was substantially similar to the 2011 Quote and Binder except that it included the Designated Premises Endorsement among the annexed forms, endorsements and exclusions.  (2011 Policy at 65.)  The Designated Premises Endorsement stated: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  (*Id.*)  It also stated in relevant part that the insurance policy "applies only to bodily injury, property damage, personal and advertising injury and medical expenses arising out of[] [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises."  (*Id.*)  The Designated Premises Endorsement included a schedule, which listed the ten premises that Midwood included on the 2011 Application.  (*Id.*)  The 2011 Policy did not include any provision for automatic renewal upon expiration of the 2011 Policy.  (All Risk ¶¶ 94.)

Midwood did not receive or read the 2011 Policy.  (Illinois Union 56.1 ¶ 13; Midwood 56.1 ¶ 20.)

### ii.   The 2012 Policy

Approximately one year later, Midwood completed an application for a new insurance policy (the "2012 Application"), (Midwood 56.1 ¶ 12; All Risk 56.1 ¶ 98; 2012 Application, Docket Entry No. 148-14), and Peter D'Souza, a broker for Partners Specialty, forwarded the 2012 Application to Illinois Union.  (Partners Specialty Submission Summary, Docket Entry No. 143-4.)  Partners Specialty attached a cover sheet entitled "Submission Summary" to the 2012 Application, and under "description of risk," Partners Specialty wrote "same as expiring."  (*Id.* at 1.)  The 2012 Application was similar to the 2011 Application, listing the same named insured and premises and requesting the same insurance coverage.  (*See* 2012 Application.)

On May 9, 2012, Illinois Union gave Midwood a quote for general commercial liability insurance (the "2012 Quote"). (2012 Quote, Docket Entry No. 148-15.) The 2012 Quote stated that the terms contained in the quote could "vary from those [Midwood] requested in [its] submission and/or from the expiring policy." (*Id.* at 1.) The differences between the 2011 Quote and the 2012 Quote were the higher premium and a change in the policy period. (*Id.*) The 2012 Quote did not include the Designated Premises Endorsement as an additional term and condition to be added to the final policy. (*Id.* at 2–3.) The 2012 Quote also stated that "[a]ctual coverage will be provided by the terms and conditions of the policy as issued" and that "[a]ctual coverage will be determined by and in accordance with the policy as issued by [Illinois Union]." (*Id.* at 3.) After receiving the 2012 Quote, Midwood paid the premium. (Midwood 56.1 ¶ 24.)

On May 24, 2012, Illinois Union issued to Midwood a binder for commercial general liability insurance (the "2012 Binder"). (2012 Binder, Docket Entry No. 148-17.) The 2012 Binder stated that the terms contained in the binder could "vary from those [Midwood] requested in [its] submission and/or from the expiring policy." (*Id.* at 1.) The 2012 Binder had the same terms and conditions as the 2012 Quote. (*Id.*) The 2012 Binder did not include the Designated Premises Endorsement as an additional term and condition to be added to the final policy. (*Id.* at 2–3.) The 2012 Binder also stated that "[a]ctual coverage will be provided by the terms and conditions of the policy as issued" and that "[a]ctual coverage will be determined by and in accordance with the policy as issued by [Illinois Union]." (*Id.* at 3.)

On June 4, 2012, Illinois Union's underwriter, Dana Jones, emailed Illinois Union's underwriter, James Williams, questioning why the 2012 Binder did not include the Designated Premises Endorsement. (Emails from James Williams dated June 4–20, 2012 ("Williams 2012 Emails") 2, Docket Entry No. 143-7.) Williams responded that he did not include the Designated

Premises Endorsement to the 2012 Binder because Midwood's insurance "renewal was based on expiring terms" and he did not "see" the Designated Premises Endorsement on the 2011 Quote or the 2011 Binder. (*Id.*) After Jones reminded Williams that the Designated Premises Endorsement had been added to the 2011 Policy after the 2011 Binder had issued, Williams told Jones to "carry them forward for the renewal." (*Id.* at 1–2.)

On June 21, 2012, Illinois Union issued the 2012 Policy. (2012 Policy.) The 2012 Policy included the Designated Premises Endorsement. (*Id.* at 65.) Partners Specialty sent the 2012 Policy to All Risk, (Letter dated July 17, 2012, Docket Entry No. 143-2), but Midwood did not receive or read the 2012 Policy, (Illinois Union 56.1 ¶ 13; Midwood 56.1 ¶ 62).

### iii. The Incident

On September 10, 2012, a building under construction at 227 Carlton Avenue, Brooklyn, New York, partially collapsed, killing one individual and injuring two others (the "Incident"). (Midwood 56.1 ¶ 64.) The Incident was allegedly caused by a Midwood employee's negligent use of a boom truck. (*Id.* ¶ 64.) On September 12, 2012, All Risk notified Illinois Union of the Incident. (Illinois Union 56.1 ¶ 16.) Illinois Union retained the law firm of Ahmuty, Demers and McManus ("Ahmuty") to represent Midwood's interest with respect to the Incident and to investigate the cause of the Incident. (*Id.* ¶ 17.)

On September 27, 2012, Ahmuty learned that "the debris at the site [where the Incident occurred] had been disturbed and moved." (*Id.* ¶ 19.) On October 16, 2012, the New York City Department of Buildings permitted the interested parties to conduct a site inspection of the premises on which the Incident occurred. (*Id.* ¶ 21.) Ahmuty retained Frank Ramos, of Rimkus Consulting Group, to conduct the inspection. (*Id.* ¶ 22.) Ramos inspected the construction site on October 16, 2012 on behalf of Illinois Union. (*Id.*)

### iv.   The Underlying Actions

Between November 7, 2012 and December 11, 2012, the two individuals that were injured and the administratrix of the estate of the individual who was killed in the Incident commenced the Underlying Actions, naming Midwood as a defendant.  (Midwood 56.1 ¶ 65.) Ahmuty filed answers on behalf of Midwood.  (Illinois Union 56.1 ¶ 26.)

On April 23, 2013, Illinois Union informed Midwood that it was denying coverage for the Underlying Actions because the Incident occurred at 227 Carlton Avenue, which was not one of the premises listed on the Designated Premises Endorsement.  (Illinois Union 56.1 ¶ 28.)  Illinois Union agreed to continue to defend Midwood in the Underlying Actions pending a judicial determination in the instant action, and it reserved the right to seek reimbursement.  (Letter dated Apr. 23, 2013 at 1–2, Docket Entry No. 135-37.)

### b.   The prior summary judgment litigation

In its initial motion for summary judgment, Illinois Union argued that, as a matter of law, there was no coverage of the Incident under the 2012 Policy because the Designated Premises Endorsement defined the scope of the 2012 Policy and because the Incident took place at a location that is not listed as a designated premises on the Designated Premises Endorsement. *Ill. Union Ins.*, 2014 WL 639420, at *6.  Illinois Union also argued that it had no obligation to defend Midwood in the Underlying Actions because neither waiver nor estoppel principles applied to prevent Illinois Union from disclaiming coverage.  *Id.* at *5.

Midwood argued that the language of the Designated Premises Endorsement should be read to include business-related delivery trips, and that because the 2012 Policy premiums were partially based on sales, it would be illogical for the 2012 Policy to not cover the deliveries from those sales.  *Id.* at *6.  Midwood also argued that even if there was no coverage under the 2012 Policy, (1) the Designated Premises Endorsement was an exclusion to coverage and not a

11

definition of the scope of coverage, and (2) Illinois Union unreasonably delayed in disclaiming coverage based on that exclusion, and is therefore prevented from denying coverage under New York insurance law. *Id.* Midwood did not argue that the Designated Premises Endorsement was not part of the 2012 Policy.

In deciding the initial summary judgment motions, Judge Ross determined that, based on the plain language of the 2012 Policy, Illinois Union had no obligation to defend or indemnify Midwood with respect to the Underlying Actions because the Designated Premises Endorsement limited Midwood's insurance coverage to certain designated premises. *Id.* at *7–8. Judge Ross thus found that because the Incident occurred on premises that were not listed on the Designated Premises Endorsement, Illinois Union was not obligated by the 2012 Policy to defend or indemnify Midwood. *Id.* at *8. In reaching this decision, Judge Ross noted that "[b]ecause the [2012] Policy's provisions are unambiguous," she did not have to "look to any extrinsic evidence that Midwood invites it to consider in determining whether there is coverage under the [2012] Policy." *Id.* at *8. Judge Ross also determined that, contrary to Midwood's claim, the Designated Premises Endorsement was not a policy "exclusion" for which Illinois Union was required to disclaim coverage under New York insurance law. *Id.* at 11.

Judge Ross found, however, that Illinois Union's seven-month delay in disclaiming coverage was unreasonable as a matter of law and that there was a genuine issue of material fact as to whether Midwood was prejudiced by Illinois Union's unreasonable delay, thereby equitably estopping Illinois Union from denying or disclaiming coverage. *Id.* at *12, 14. Based on this genuine issue of material fact, Judge Ross denied Illinois Union's summary judgment motion as to Midwood's equitable estoppel counterclaim and directed the parties to "conduct further discovery on this issue and . . . renew motions at the conclusion of that discovery." *Id.* at *14.

Midwood filed a third-party complaint against All Risk a few months after the 2014 Decision. (Third-party Compl.) Midwood alleges in the third-party complaint that, contrary to its agreement with Midwood, All Risk failed to obtain an insurance policy to insure Midwood against liability arising from its business. (*Id.*) Midwood also filed an Amended Answer, asserting counterclaims against Illinois Union for reformation of the 2012 Policy and for equitable estoppel. (Midwood Am. Answer, Docket Entry No. 103.)

Since the 2014 Decision, All Risk's broker and Illinois Union's underwriter have been deposed. (Midwood Mem. 16–17.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-

moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Illinois Union's summary judgment motion as to Midwood's equitable estoppel counterclaim

As discussed above, in the 2014 Decision, Judge Ross determined that Illinois Union's unexplained, seven month delay in disclaiming coverage was unreasonable as a matter of law. *Ill. Union Ins.*, 2014 WL 639420, at *12 (collecting cases). Judge Ross also found that there was a genuine issue of material fact as to whether Midwood had been prejudiced by Illinois Union's unreasonable delay, and ordered the parties to conduct further discovery and submit renewed motions for summary judgment.[7] *Id.* at *14. The Court considers whether Midwood has presented evidence that Illinois union's delay caused it prejudice.[8]

Illinois Union moves for summary judgment as to this counterclaim and argues that it should not be equitably estopped from disclaiming coverage because Midwood has failed to establish any prejudice as a matter of law. (Illinois Union Mem. 12.) Illinois Union further argues that its expert's investigation did not cause Midwood any prejudice because he was a qualified expert, he has not provided an expert opinion, and after Illinois Union disclaimed coverage on April 23, 2013, Midwood retained its own expert. (*Id.* at 12–16.) Midwood argues that it has suffered prejudice from Illinois Union's seven-month delay in disclaiming coverage

---

[7] No party seeks reconsideration of that portion of the 2014 Decision and accordingly, the Court considers only whether Midwood has shown prejudice as a result of Illinois Union's delay in disclaiming coverage under the 2012 Policy.

[8] Although Illinois Union is the party moving for summary judgment with respect to Midwood's equitable estoppel counterclaim, because Midwood is the party seeking equitable estoppel, it bears the burden of establishing that it was prejudiced by Illinois Union's unreasonable delay. *Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-CV-2466, 2014 WL 639420, at *13 (E.D.N.Y. Feb. 18, 2014) (stating that Midwood "must demonstrate that [it] suffered prejudice as a result of [Illinois Union's] delay").

because the engineer expert who inspected the premises of the Incident was not a qualified structural engineer expert, and because Midwood's current expert cannot conduct her own site inspection as the premises of the Incident has since been repaired.[9] (Midwood Opp'n 3.)

In the insurance context, equitable estoppel "arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002) (citing *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 699 (1980)); *see also N.Y. Cen. Mut. Fire Ins. Co. v. Edwards*, No. 07-1267, 2009 WL 230146, at *1 (2d Cir. Jan. 30, 2009) ("The doctrine of equitable estoppel 'preclude[s] a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted.'" (alteration in original) (quoting *Shondel J. v. Mark D.*, 7 N.Y.3d 320, 326 (2006)); *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) ("Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." (citing *Globe Indem. Co. v. Franklin Paving Co.*, 430 N.Y.S.2d 109, 111 (App. Div. 1980))). Equitable estoppel "requires a showing of prejudice to the insured." *Burt Rigid Box*, 302 F.3d at 95 (citing *Albert J. Schiff Assocs.*, 51 N.Y.2d at 699); *see also Adams v. Chicago Ins. Co.*, 49 F. App'x 346, 349 (2d Cir. 2002) ("Even where an insurer unreasonably delays in disclaiming coverage, the insured must demonstrate prejudice from the delay in order to merit an estoppel." (citing *U.S. Fid. & Guar. Co. v. Weiri*, 696 N.Y.S.2d 200, 201 (App. Div. 1999))).

---

[9] Midwood has not moved for summary judgment as to its equitable estoppel counterclaim and raises this argument only in opposition to Illinois Union's motion to for summary judgment as to the equitable estoppel counterclaim.

"Whether or not an insured suffered prejudice is typically a question of fact." *Adams*,

49 F. App'x at 349 (citing *Greater N.Y. Sav. Bank v. Travelers Ins. Co.*, 570 N.Y.S.2d 122, 123

(App. Div. 1991)); *James River Ins. Co. v. Power Mgmt., Inc.*, 55 F. Supp. 3d 446, 456 (E.D.N.Y.

2014) (stating whether an insured suffered prejudice by an insurer's delay in disclaiming "is

generally a question of fact" (citing *Adams*, 49 F. App'x at 349)).

Although the New York Court of Appeals "has long recognized that an insurer can be

equitably estopped from issuing a disclaimer if at the time it disclaims it has controlled the

defense of its insured," the Court of Appeals "has only found estoppel in cases where, by the

time the insurer attempted to avoid liability under the policy, the underlying litigation against the

insured had reached a point where the course of the litigation had been fully charted." *206–208*

*Main St. Assocs., Inc. v. Arch Ins. Co.*, 965 N.Y.S.2d 31, 34 (App. Div. 2013) (citing *Gordon, Inc.*

*v. Mass. Bonding & Ins. Co.*, 229 N.Y. 424 (1920)); *see also Burt Rigid Box*, 302 F.3d at 95

("Courts may hold that an insurer is estopped from asserting a defense of lack of coverage

where, for example, an insurer, though not in fact obligated to provide coverage, defends the case

without asserting any policy defenses, and as a consequence the insured reasonably suffers the

detriment of losing control over its defense." (citing *Albert J. Schiff Assocs.*, 51 N.Y.2d at 699)).

Prejudice is determined as of the time the insurer disclaimed coverage. *Gelfman v. Capitol*

*Indem. Corp.*, 39 F. Supp. 3d 255, 266 (E.D.N.Y. 2014) (adopting report and recommendation)

(noting that "the relevant inquiry is whether" the insured "suffered any prejudice as a result of

any conduct by [the insurer] up until" the insurer disclaims coverage). An insured's speculative

allegation that it would have pursued a different litigation strategy is insufficient to demonstrate

prejudice. *Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 306 (N.D.N.Y.

2012) (finding that the insureds' "claimed prejudice" that they would have structured their

litigation strategy differently "if they were aware that [the insurer] would later" disclaim

coverage "[wa]s speculative and insufficient to demonstrate prejudice").  However, where

insureds present evidence that the insurer's defense was deficient, courts have found the insured

suffered prejudice.  *See James River*, 55 F. Supp. 3d at 457 (denying insurer's motion for

summary judgment and finding disputed issues of fact as to insured's prejudice where the insured

submitted evidence that the insurer's appointed counsel "failed to obtain the services of an

independent expert to examine" the accident site); *Yoda, LLC v. Nat'l Union Fire Ins. Co. of

Pittsburgh, PA*, 931 N.Y.S.2d 18, 21 (App. Div. 2011) (finding that the insured was prejudiced by

the insurer's delay and, therefore, the insurer was estopped from disclaiming coverage because,

as a result of the delay, the insured was prevented from timely impleading another party).

Midwood has raised a genuine issue of material fact with respect to whether it was

prejudiced by Illinois Union's delay in disclaiming coverage under the 2012 Policy.  Midwood's

expert, Julie Mark Cohen, Ph.D., P.E., SECB, a consulting structural and forensic engineer,

stated in her expert report that because Illinois Union's expert lacked experience as a structural

engineer, he was not qualified to inspect the construction site where the Incident occurred.

(Midwood Opp'n 5.)  Cohen further concluded that the expert's lack of experience resulted in an

inadequate inspection of the premises and an erroneous conclusion that the Incident was not

caused by a structural problem with the building outside of Midwood's control.  (*Id.* at 5–6.)

Moreover, because the premises on which the Incident occurred have been repaired, Midwood's

current expert is unable to conduct her own investigation of the construction site.  (*Id.* at 7–8.)

Thus, whether Midwood has been prejudiced necessarily depends on whether the expert retained

by Illinois Union was qualified to conduct the inspection of the site of the Incident, whether his

conclusion was erroneous, and whether Midwood's expert, who cannot now inspect the site of

the Incident, can mitigate this error. Based on this evidence, a reasonable juror could conclude that Midwood has been prejudiced by Illinois Union's conduct. *See James River*, 55 F. Supp. 3d at 457 (finding disputed issues of fact as to whether the insured was prejudiced by the insurer's "fail[ure] to obtain the services of an independent expert to examine" the accident site).

Illinois Union argues that its expert was a properly qualified expert. (Illinois Union Mem. 13.) However, "[w]hen deciding a summary judgment motion, a court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact." *Urbont v. Sony Music Entm't*, --- F.3d ---, ---, 2016 WL 4056395, at *6 (2d Cir. July 29, 2016). Moreover, Illinois Union's argument that Midwood has not suffered prejudice because the expert did not memorialize his findings in an expert report does not change the analysis. Midwood has presented evidence that the expert testified at a deposition about his findings. Furthermore, although Midwood has engaged its own expert, the expert cannot adequately correct Illinois Union's expert's findings if in error, because she cannot investigate the construction site. (Midwood Opp'n 8.)

Accordingly, the Court denies Illinois Union's motion for summary judgment as to Midwood's counterclaim for equitable estoppel.

### c. Illinois Union's and Midwood's summary judgment motions as to Midwood's counterclaim for reformation of the 2012 Policy

Midwood moves for summary judgment on its counterclaim against Illinois Union, arguing that the 2012 Policy must be reformed to exclude the Designated Premises Endorsement because the parties never intended for the Designated Premises Endorsement to be part of the 2012 Policy. (Midwood Mem. 20–25.) Midwood argues that the inclusion of the Designated Premises Endorsement was either a mutual mistake or a fraudulently induced unilateral mistake. (*Id.*) Illinois Union cross-moves for summary judgment as to Midwood's reformation

counterclaim and argues that Midwood's claim fails as a matter of law.  (Illinois Union Mem. 2.)

Illinois Union argues that the parties intended to include the Designated Premises Endorsement

in the 2012 Policy and that any mistake on the part of Midwood and All Risk was caused by their

failure to read the 2012 Policy.  (*Id.* at 18–20.)

Under New York law, "mutual mistake or fraud may furnish the basis for reforming a

written agreement." *Collins v. Harrison-Bode*, 303 F.3d 429, 434 (2d Cir. 2002) (quoting

*Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (1986)); *see also 313–315 W. 125th St. L.L.C. v.

Arch Specialty Ins. Co.*, 30 N.Y.S.3d 74, 76 (App. Div. 2016) ("A claim for reformation of a

written agreement must be grounded upon either mutual mistake or fraudulently induced

unilateral mistake." (citation omitted)); *Gunther v. Vilceus*, 36 N.Y.S.3d 723, 725 (App. Div.

2016) (noting that "mutual mistake or a unilateral mistake induced by the other party's fraudulent

misrepresentation" are grounds for reformation (citing *Chimart*, 66 N.Y.2d at 573)).  "Because

the remedy of reformation presents the danger 'that a party, having agreed to a written contract

that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract,'

the New York courts have sharply limited the remedy of reformation both procedurally and

substantively." *Collins*, 303 F.3d at 435 (quoting *Chimart*, 66 N.Y.2d at 573–74).  Thus, a party

seeking reformation of a contract must establish a mutual mistake or a fraudulently induced

unilateral mistake "by clear and convincing evidence." *Id.* (citing *Healy v. Rich Prods. Corp.*,

981 F.2d 68, 73 (2d Cir. 1992); *see also Gunther*, 36 N.Y.S.3d at 725 (stating that a party seeking

reformation must establish the grounds by clear and convincing evidence (citing *Chimart*,

66 N.Y.2d at 573)).

### i.   Mutual mistake

Midwood argues that the inclusion of the Designated Premises Endorsement in the 2012

Policy was a mutual mistake because the parties did not intend to include the Designated

Premises Endorsement in the 2012 Policy, as demonstrated by the absence of the Designated Premises Endorsement in both the 2012 Quote and the 2012 Binder. (Midwood Mem. 25.) Illinois Union argues that because the 2012 Policy was intended to be a renewal of the terms of the 2011 Policy and because the 2011 Policy included the Designated Premises Endorsement, the 2012 Policy correctly memorializes the parties' intent to include the Designated Premises Endorsement. (Illinois Union Mem. 18.)

In order to reform a contract on the basis of mutual mistake, "the mutual mistake must exist at the time the contract is entered into" and it "must be so material that it goes to the foundation of the agreement." *Simkin v. Blank*, 19 N.Y.3d 46, 52–53 (2012) (alteration, citations and internal quotation marks omitted); *see also Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 390 (S.D.N.Y. 2014) ("New York law permits reformation of a contract due to mutual mistake 'where the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement such as when an inadvertent secretary's error fails to reflect the actual agreement of the parties.'" (alteration omitted) (quoting *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 440 (E.D.N.Y. 2011))). "The premise underlying the doctrine of mutual mistake is that 'the agreement as expressed, in some material respect, does not represent the meeting of the minds of the parties.'" *Simkin*, 19 N.Y.3d at 52–53 (quoting *Gould v. Bd. of Educ. of Sewanhaka Cent. High Sch. Dist.*, 81 N.Y.2d 446, 453 (1993)).

Midwood and All Risk have failed to establish the existence of a mutual mistake by clear and convincing evidence. It is undisputed that the 2011 Policy included the Designated Premises Endorsement, (*see* 2011 Policy at 65), that 2012 Application listed the same material terms as the 2011 Application, (*see* 2012 Application), and that Partners Specialty told Illinois Union that the 2012 Policy was intended to be on the same terms of the 2011 Policy, (Partners Specialty

Submission Summary 1). It also undisputed that Illinois Union did not include the Designated Premises Endorsement in the 2012 Quote or the 2012 Binder. (2012 Quote; 2012 Binder.) In addition, it is undisputed that Illinois Union's underwriters noticed that the Designated Premises Endorsement was missing from the 2012 Binder and included it in the 2012 Policy without consulting Midwood, All Risk or Partners Specialty, because Illinois Union understood that the 2012 Policy was intended to be based on the same terms as the 2011 Policy. (Williams 2012 Emails 1–2.)

Based on these undisputed facts, even if Midwood and All Risk mistakenly believed that the 2012 Policy did not include the Designated Premises Endorsement because the 2012 Quote and the 2012 Binder did not include the Designated Premises Endorsement, (Midwood 56.1 ¶¶ 55, 58–59; All Risk 56.1 ¶¶ 143–49), there was no mistake on the part of Illinois Union when it added the Designated Premises Endorsement to the 2012 Policy after noticing that it was missing from the 2012 Quote and the 2012 Binder, based on its understanding that the 2012 Policy was intended to be the same as the 2011 Policy, (Illinois Union 56.1 ¶¶ 8–10). Because only Midwood and All Risk were mistaken as to the inclusion of the Designated Premises Endorsement in the 2012 Policy, the mistake was not mutual. *See AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003) (finding that a "mistake was not mutual" where the defendant insured "mistakenly believed" that his insurance policy included a specific term, while the plaintiff insurer "drafted the policy and knew what it provided").

### ii.   Unilateral mistake

Midwood argues, alternatively, that the 2012 Policy should be reformed to exclude the Designated Premises Endorsement because its unilateral mistaken belief that the Designated Premises Endorsement was not included in the 2012 Policy was caused by Illinois Union failing to list the Designated Premises Endorsement in the 2012 Quote or the 2012 Binder and then

including it in the 2012 Policy without obtaining Midwood's consent.  (Midwood Opp'n 13.)

Midwood argues that because Illinois Union "lack[ed] consent to the inclusion of the Designated

Premises Endorsement in the [2012 Policy] after issuance of the 2012 Quot[e] and 2012 Binder

without this endorsement," Illinois Union's action "can only be inferred to be . . . misleading

conduct even though a specific fraudulent intent may be lacking."  (*Id.*)  All Risk argues that by

including the Designated Premises Endorsement in the 2012 Policy after Midwood agreed to the

terms listed on the 2012 Binder and paid the advance premium, Illinois Union reduced the value

of Midwood's insurance, and that it was therefore fraudulent for Illinois Union to not reduce the

premium to reflect the diminished value of Midwood's insurance caused by the inclusion of the

Designated Premises Endorsement.  (All Risk Mem. 32–33.)  Illinois Union argues that the

mistake by Midwood and All Risk was caused by their failure to read the 2012 Policy, not by

Illinois Union's conduct.  (Illinois Union. Mem. 20.)

The elements of a reformation claim based on a fraudulently induced unilateral mistake

are "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and

an injury resulting from justifiable reliance by the aggrieved party."  *Allen v.

WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citing *Channel Master Corp. v.

Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 406–07 (1958))); *see also Barclay Arms, Inc. v. Barclay

Arms Assocs.*, 74 N.Y.2d 644, 646–47 (1989) (stating that the "essential elements of a fraud

claim [are] misrepresentation of a material fact, falsity, scienter and deception"); *Timber

Rattlesnake, LLC v. Devine*, 986 N.Y.S.2d 278, 279–80 (App. Div. 2014) (stating that a party

seeking reformation on the basis of fraudulently induced unilateral mistake must establish "a

misrepresentation that is false and that the defendant knows is false, made to induce the other

party to rely on it, justifiable reliance on the misrepresentation by the other party, and injury"

(citation omitted)). A reformation claim may not be based on a unilateral mistake unless the mistake was the result of the opposing party's fraud. *Barclay Arms, Inc. v. Barclay Arms Assocs.*, 74 N.Y.2d 644, 646 (1989) ("A bare claim of unilateral mistake by plaintiff, unsupported by legally sufficient allegations of fraud on the part of defendants, does not state a cause of action for reformation." (citations omitted)); *see Charron v. Sallyport Glob. Holdings, Inc.*, No. 12-CV-6837, 2014 WL 7336463, at *19 (S.D.N.Y. Dec. 24, 2014) ("In a case of unilateral mistake, a party is only entitled to reformation if the other party is guilty of fraud." (citing *AMEX Assurance*, 316 F.3d at 161)), *aff'd*, 640 F. App'x 80 (2d Cir. 2016); *Ivory Dev., LLC v. Roe*, 25 N.Y.S.3d 686, 691 (App. Div. 2016) ("A unilateral mistake provides grounds for reformation of a contract only when coupled with fraud." (citing *Timber Rattlesnake, LLC v. Devine*, 986 N.Y.S.2d 278, 279 (App. Div. 2014)); *see also AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003) (noting that "reformation is available in cases of fraud").

A party whose unilateral mistake is the result of a failure to read the final contract is generally precluded from claiming that the mistake was fraudulently induced either because of unreasonable reliance or lack of fraudulent intent on the part of the opposing contracting party. *See Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 503–04 (S.D.N.Y. 2004) (finding that although the terms of the binder conflicted with the terms in the policy, the insurer seeking to rely on the binder's terms failed to establish both fraudulent intent on the part of the insured and reasonable reliance because the insurer had the opportunity to read the insurance policy and discover its mistake (first citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); and then citing *John Hancock Mutual Life Ins. v. Carolina Power & Light Co.*, 717 F.2d 664, 671 (2d Cir. 1983))); *U.S. Legal Support, Inc. v. Eldad Prime, LLC*, 5 N.Y.S.3d 1, 2 (App. Div. 2015) ("Defendant's failure to read the final document before signing it

precludes its claim of unilateral mistake induced by fraud based on plaintiff's failure to highlight its deletion of the portion of the provision capping the reimbursement amount, before presenting it to defendant's in-house counsel for defendant's signature." (citation omitted)); *see also Timber Rattlesnake*, 986 N.Y.S.2d at 280 (holding that the plaintiff failed to establish fraud where a term not included in an initial real estate contract was later added to the final deed, because the term was added under the belief that it reflected the parties' intent and the plaintiff could have discovered the added term by reading the deed but failed to do so); *Cash v. Titan Fin. Servs., Inc.*, 873 N.Y.S.2d 642, 645 (App. Div. 2009) (finding that the plaintiff failed to establish fraud where the plaintiff failed to read the deed to property because "a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents (alterations, citation and internal quotation marks omitted)); *KNK Enters., Inc. v. Harriman Enters., Inc.*, 824 N.Y.S.2d 307, 307 (App. Div. 2006) ("A party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence." (citing *East 15360 Corp. v. Provident Loan Soc. of New York*, 575 N.Y.S.2d 856 (App. Div. 1991))).

In addition, a party's sophistication and the circumstances of the contract negotiations — whether the negotiations took place at arm's length — are relevant factors when determining whether a failure to read the contract precludes a finding of fraud. *See Chimart Assocs.*, 66 N.Y.2d at 574 (finding that the "sophisticated, counseled" plaintiff, which "deal[t] at arm's length" with the defendant, failed to establish fraudulently induced unilateral mistake where the plaintiff admitted that "he failed to read the agreement"); *Thompson v. McQueeney*, 868 N.Y.S.2d 443, 447 (App. Div. 2008) (finding that the defendants failed to establish that their unilateral mistake was fraudulently induced because they were "sophisticated business persons who were

counseled by attorneys," the language of the agreement was unambiguous and "with a minimum degree of due diligence, defendants' mistake . . . would have been readily apparent").

In deciding whether Midwood's mistake was fraudulently induced, the Court finds instructive the Second Circuit's decision in *AMEX Assurance*, 316 F.3d 154, where the court relied on the New York Court of Appeals' decision in *Hay v. Star Fire Ins. Co.*, 77 N.Y. 235 (1879). In *Hay*, the homeowner insured plaintiff requested a renewal of her fire insurance from the defendant insurer on the same terms, and the insurer agreed. *Hay*, 77 N.Y. at 238. However, without informing the plaintiff, the defendant added a subrogation term, requiring that in the event of a loss, the plaintiff would assign to the defendant her right to be compensated by other parties. *Id.* The plaintiff failed to read the policy and, after a fire damaged her home, the defendant attempted to enforce the subrogation term. *Id.* at 238–39. The New York Court of Appeals held that although the plaintiff would have discovered the term if she had read the policy, she was entitled to reformation of the contract to exclude the subrogation term because:

> It was bad faith on the part of the defendant to change so radically the terms of the policy, and deliver it as a policy simply renewing the old one, without notice of the change. A party, whose duty it is to prepare a written contract, in pursuance of a previous agreement, to prepare one materially changing the terms of such previous agreement and deliver it as in accordance therewith, commits a fraud which entitles the other party to relief according to the circumstances presented.

*Id.* at 240. The court found that "[a]n agreement to renew a policy, implies that the terms of the existing policy are to be continued." *Id.* at 239. Moreover, the court noted that the subrogation term rendered the insurance "contract practically of no benefit" and that it likely violated public policy. *Id.* at 240 (citing *Excelsior Fire Ins. Co. v. Royal Ins. Co.*, 55 N.Y. 343, 343 (1873)).

In *AMEX Assurance*, the defendant, a potential beneficiary to a life insurance policy, relied on *Hay* to seek reformation of the policy. *AMEX Assurance*, 316 F.3d at 161. Prior to his

death, the defendant's father had obtained a life insurance policy from the plaintiff insurer. *Id.* at 156. Five years after the father first obtained the life insurance policy, the insurer "replaced" its standard life insurance policy with a new policy, and "le[d] its subscribers to believe that the replacement policy would substantially conform to its predecessor." *Id.* at 157. The insurer failed to alert its insureds that the replacement policy changed the default order of beneficiaries, which precluded the defendant from obtaining any benefits under the policy. *Id.* The defendant's father failed to read the replacement policy and never discovered the new default order of beneficiaries. *Id.* In rejecting the defendant's claim in *Amex Assurance*, the Second Circuit noted that, like the insurer in *Hay*, the insurer in *AMEX Assurance* led its insured to believe that the new policy "would substantially conform" to the expiring policy and subsequently changed an "important term" without informing its insured. *Id.* The court found, however, that unlike the insurer in *Hay*, the insurer in *AMEX Assurance* did not describe the new policy "as a simple 'renewal' of the preexisting policy." *Id.* In addition, unlike in *Hay* where the undisclosed change benefited the insurer, and it was therefore fraudulent to not bring the change to the insured's attention, the change in *AMEX Assurance* altered the order of beneficiaries but did not benefit the insurer. *Id.* Thus, the defendant in *AMEX Assurance* was not entitled to reformation of the policy because although the insurer "may well have been at fault either in making the change or in failing to call attention to it, that fault seems to be more in the nature of carelessness or negligence; it cannot easily be characterized as fraud, in the usual sense of the word." *Id.*

Here, like the insurer in *Hay*, Illinois Union's inclusion of the Designated Premises Endorsement in the 2012 Policy benefitted Illinois Union by limiting Midwood's insurance coverage and excluding the "significant" portion of Midwood's business that occurs outside of

the premises on which its lumberyard is located. However, unlike the subrogation term in *Hay*, which rendered the insurance "contract practically of no benefit" and likely violated public policy, *Hay*, 77 N.Y. at 240, because the Designated Premises Endorsement did not preclude insurance coverage of the portion of Midwood's business that occurs on the premises on which its lumberyard is located, its inclusion in the 2012 Policy did not render Midwood's insurance practically of no benefit. Moreover, unlike the renewal policy in *Hay*, the 2012 Binder did not state that the 2012 Policy would be based on the same terms but, instead, stated that Midwood's insurance would be governed by the terms included in the 2012 Policy. In addition, Illinois Union has presented evidence that it was told by Partners Specialty that the 2012 Policy was to be on the same terms as the 2011 Policy, that the Designated Premises Endorsement was part of the 2011 Policy, and that the omission of the Designated Premises Endorsement from the 2012 Quote and the 2012 Binder was inadvertent. When Partners Specialty submitted the 2012 Application to Illinois Union, the submission stated that the 2012 Policy was to be the same based on the same terms as the expiring 2011 Policy. (D'Souza Emails 2.) In addition, when Illinois Union's underwriters noticed that the Designated Premises Endorsement was missing from the Binder, (Williams 2012 Emails 2), they added the Designated Premises Endorsement to the 2012 Policy because they understood that the 2012 Policy was to be based on the same terms of the 2011 Policy and because the Designated Premises Endorsement was part of the 2011 Policy. (*Id.* at 1–2.) Moreover, the 2012 Binder stated that Midwood's insurance coverage would be "provided by the terms and conditions of the policy as issued" and that the insurance coverage would be "determined by and in accordance with the policy as issued by [Illinois Union]." (2012 Binder at 3.) Thus, the facts in this case are more similar to those in *AMEX Assurance* than to those in *Hay*, suggesting carelessness rather than fraud. *AMEX Assurance*,

316 F.3d at 161 (noting that although the insurer "may well have been at fault either in making the change or in failing to call attention to it, that fault seems to be more in the nature of carelessness or negligence" rather than fraud).

In addition, because Midwood and All Risk are sophisticated companies that could have discovered their unilateral mistake by reading the 2012 Policy but failed to do so, they have failed to establish by clear and convincing evidence that their unilateral mistake was fraudulently induced by Illinois Union. *See Travelers Indem.*, 322 F. Supp. 2d at 503–04 (finding that the plaintiff insurer failed to establish fraud on the part of the defendant insured, whose broker drafted the final insurance policy and unilaterally changed a material term, where the insurer could have discovered its unilateral mistake by reading the final insurance policy but failed to do so); *Thompson*, 868 N.Y.S.2d at 447 (finding that the defendants failed to establish that their unilateral mistake was fraudulently induced because they were "sophisticated business persons," represented by counsel and would have discovered their mistake had they read the final contract).

The Court grants Illinois Union's motion for summary judgment, and denies Midwood's motion for summary judgment, as to Midwood's reformation counterclaim.

> **d.  Midwood's and All Risk's motions for summary judgment as to Illinois Union's claim that the Designated Premises Endorsement precludes coverage of the Incident**

Midwood and All Risk seek partial summary judgment to dismiss Illinois Union's claim that the Designated Premises Endorsement precludes insurance coverage of the Incident. Midwood and All Risk argue that, although the 2012 Policy is a binding agreement between Midwood and Illinois Union, because the Designated Premises Endorsement was neither included in the 2012 Quote nor the 2012 Binder that they received in advance of the 2012 Policy, the parties never agreed to include the Designated Premises Endorsement in the 2012 Policy.

(Midwood Mem. 20; All Risk Mem. 22–23.)  Midwood and All Risk further argue that Illinois

Union was not permitted to include the Designated Premises Endorsement in 2012 Policy

without Midwood's consent and that the Designated Premises Endorsement is therefore not a

part of Midwood's insurance policy.  (Midwood Mem. 19–20; All Risk Mem. 15.)  Midwood

also argues that, despite Judge Ross's determination that the Designated Premises Endorsement

precludes insurance coverage, the Court may consider this motion either (1) because Judge Ross

did not consider the issue of whether the Designated Premises Endorsement was "properly

included" in the policy, and thus the law-of-the-case doctrine does not preclude this argument, or

(2) because new evidence and the avoidance of "manifest injustice" provide a basis to reconsider

Judge Ross' decision.  (Midwood Mem. 15–18.)

Illinois Union argues that the Designated Premises Endorsement was properly included in

the 2012 Policy because its inclusion reflects the parties' intentions and because the 2012 Binder

was a temporary agreement, which was superseded by the 2012 Policy.  (Illinois Union Mem. of

Law in Opp'n ("Illinois Union Opp'n") 18–19, Docket Entry No. 138.)  Illinois Union also

argues that in ruling that the Designated Premises Endorsement specifically excluded coverage

of the Incident, Judge Ross implicitly decided that the Designated Premises Endorsement was

part of the 2012 Policy, making her decision the law of the case.  (*Id.* at 21.)

The Court first considers whether the law-of-the-case doctrine forecloses Midwood's and

All Risk's motion.

### i.    The law-of-the-case doctrine

Midwood argues that the law-of-the-case doctrine does not prevent the Court from

dismissing Illinois Union's claim that the Midwood insurance policy precluded coverage

because, although Judge Ross held that the Designated Premises Endorsement limited

Midwood's insurance coverage to certain designated premises, Judge Ross "did not determine

whether the Designated Premises Endorsement was properly included in the [2012 Policy]." (Midwood Mem. 15.)  Illinois Union argues that the law-of-the-case doctrine does prevent the Court from considering this issue because, in deciding that the Designated Premises Endorsement precludes coverage of the Incident, Judge Ross "[b]y necessary implication" decided that the Designated Premises Endorsement is part of the 2012 Policy.  (Illinois Union Opp'n 21.)

"Although not binding," the law-of-the-case doctrine "ordinarily forecloses relitigation of issues" that a court has "expressly or impliedly decided."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013) (citation omitted).  The law-of-the-case doctrine applies to "everything decided by necessary implication."  *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir. 1981) (finding that where the court's prior opinion held that the plaintiffs had stated a claim for breach of fiduciary duty pursuant to a federal statute, the court "necessarily assumed" that the federal statute included a private right of action and that the law of the case doctrine precluded the defendant from arguing that there was no cause of action under the statute); *Randolph v. Vaugh*, No. 05-CV-3108, 2006 WL 416398, at *2 (S.D.N.Y. Feb. 17, 2006) (finding that "[b]y granting leave to amend the complaint as to specific allegations only, none of which implicated A.D.A. Stolley," the court "implicitly precluded [the plaintiff] from introducing further claims against A.D.A. Stolley").

"[T]he major grounds justifying reconsideration" of decisions that are otherwise not subject to relitigation due to the law-of-the-case doctrine "are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *United States v. Plugh*, 648 F.3d 118, 123–24 (2d Cir. 2011) (citation and internal quotation marks omitted); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d

1245, 1255 (2d Cir. 1992) (citation and internal quotation marks omitted); *see also Starbucks*, 736 F.3d at 208 ("[T]he doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (citation and internal quotation marks omitted)); *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psych. Ctr.*, 652 F.3d 277, 288–89 (2d Cir. 2011) ("[A] prior order usually may not be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." (citation and internal quotation marks omitted)).

In its initial motion for summary judgment, Illinois Union argued that, as a matter of law, the 2012 Policy did not cover the Incident because the Designated Premises Endorsement defined the scope of the 2012 Policy, limiting coverage to specified designated premises, and because the Incident took place at a premises not listed on the Designated Premises Endorsement. *Ill. Union Ins.*, 2014 WL 639420, at *6. In cross-moving for summary judgment on the grounds that the Incident was covered by the 2012 Policy, Midwood argued that the Designated Premises Endorsement should be read to include business-related delivery trips, and that, because the 2012 Policy premiums were partially based on sales, it would be illogical for the 2012 Policy to not cover the deliveries from those sales. *Id.*

In the 2014 Decision, Judge Ross found that because the Designated Premises Endorsement limited Midwood's insurance coverage to certain designated premises and the location of the Incident was not one of the insured premises, Illinois Union did not have an obligation to defend or indemnify Midwood. *Id.* at *8. In reaching this decision, Judge Ross noted that under the Designated Premises Endorsement, the 2012 Policy only applied to "bodily

injury or property damage that arises out of the ownership, maintenance or use of the premises shown . . . or incidental to those premises."[10] *Id.* at 7.

By finding that the Designated Premises Endorsement precluded coverage of the Incident, Judge Ross necessarily found that the Designated Premises Endorsement is part of the 2012 Policy. *See Samonek v. Pratt*, 976 N.Y.S.2d 324, 326 (App. Div. 2013) (finding that a contract term was not part of an otherwise valid contract because the parties did not agree to the term and that the term was therefore unenforceable); *see also Fogel*, 668 F.2d at 108 (finding that where the court previously held that the plaintiffs had stated a claim for breach of fiduciary duty pursuant to a federal statute, the court "necessarily assumed" that the federal statute included a private right of action).

Moreover, Judge Ross directed the parties to conduct discovery on the limited issue of determining whether Midwood was prejudiced by Illinois Union's unreasonable delay in disclaiming coverage. *Ill. Union Ins.*, 2014 WL 639420, at *14. In so doing, Judge Ross implicitly precluded Midwood from bringing further claims challenging the coverage as set forth in the Designated Premises Endorsement. *See Randolph v. Vaugh*, No. 05-CV-3108, 2006 WL 416398, at *2 (S.D.N.Y. Feb. 17, 2006) (finding that "[b]y granting leave to amend the complaint as to specific allegations only, none of which implicated A.D.A. Stolley," the court "implicitly precluded [the plaintiff] from introducing further claims against A.D.A. Stolley").

Midwood argues that the law-of-the-case doctrine does not apply because Judge Ross did not determine whether the Designated Premises Endorsement is part of the 2012 Policy.

---

[10] As discussed above, Judge Ross nevertheless determined that there was a genuine issue of material fact as to whether Illinois Union was equitably estopped from denying coverage under the 2012 Policy and directed the parties to "conduct further discovery on this issue." *Ill. Union Ins.*, 2014 WL 639420, at *14.

(Midwood Mem. 15.)  However, because Judge Ross necessarily decided that the Designated Premises Endorsement was part of the 2012 Policy, *see Samonek*, 976 N.Y.S.2d at 326, and because the law-of-the-case doctrine "forecloses relitigation of issues" that a court has "impliedly decided," *Starbucks*, 736 F.3d at 208, the Court concludes that the law-of-the-case doctrine applies.

The Court considers whether Midwood has shown new evidence or manifest injustice to compel reconsideration of the 2014 Decision.

### ii.    Reconsideration of the 2014 Decision

Midwood argues that even if the law-of-the-case doctrine applies, the Court should reconsider the 2014 Decision because it was issued before Midwood learned of evidence critical to its case.  (Midwood Mem. 16–17.)  Midwood specifically argues that because the 2014 Decision was made while discovery was ongoing, Midwood did not have the benefit of the deposition testimonies of All Risk's broker and Illinois Union's underwriter, whose testimonies informed Midwood of the circumstances under which Illinois Union added the Designated Premises Endorsement to the 2012 Policy.  (*Id.* at 17.)  Midwood also argues that the Court's refusal to reconsider the 2014 Decision would result in manifest injustice because "Midwood is exposed to potentially millions of dollars of potential liability in the [Underlying Actions]" and because the 2012 Policy premiums were partially based on sales, including deliveries from those sales.  (*Id.*)

Illinois Union argues that because Midwood's counsel agreed to engage in summary judgment motion practice with limited discovery, Midwood's additional evidence "does not alter" the fact that the 2014 Decision remains law of the case.  (Illinois Union Opp'n 21.)

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Virgin Atl. Airways, Ltd. V.*

*Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and internal quotation marks omitted). "The major grounds justifying reconsideration" of a decision that is the law of the case "are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (citation omitted); *see also Starbucks*, 736 F.3d at 208.

### 1. New evidence

Although the Second Circuit has not addressed precisely when new evidence will support reconsideration of a decision that is the law of the case, district courts in the Circuit use the following standard:

> [T]he proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered. The party moving for reconsideration based on the newly discovered evidence must show that (1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision.

*Prestige Jewelry Int'l, Inc. v. BK Jewellery HK, BK Jewelry (N.Y.) Inc.*, No. 11-CV-2930, 2015 WL 8481873, at *2 (S.D.N.Y. Oct. 14, 2015) (quoting *In re Rezulin Products Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004)). The party moving for reconsideration of a decision that is the law of the case bears the burden of establishing that the new evidence was not previously available. *Vringo, Inc. v. ZTE Corp.*, No. 14-CV-4988, 2015 WL 4743573, at *8 (S.D.N.Y. Aug. 11, 2015) (citing *In re Rezulin Products*, 224 F.R.D. at 350); *see also Goodman v. AssetMark, Inc.*, 53 F. Supp. 3d 583, 586 (E.D.N.Y. 2014) (noting that the party moving for reconsideration of a decision that is the law of the case bears the burden of establishing the grounds that justify reconsideration (citing *In re Fannie Mae 2008 ERISA Litig.*, No. 09-CV-1350, 2014 WL

1577769, at *3 (S.D.N.Y. Apr. 21, 2014)).

Midwood concedes that it possessed the 2012 Binder when it moved for summary judgment prior to the 2014 Decision and that the 2012 Binder did not include the Designated Premises Endorsement. (Midwood Mem. 16.) Midwood argues, however, that because it did not learn of the circumstances under which the Designated Premises Endorsement was unilaterally added to the 2012 Policy until after the 2014 Decision, this constitutes new evidence compelling reconsideration. (*Id.* at 16–17.) Midwood explains that until it deposed its broker at All Risk and Illinois Union's underwriter, and until Partners Specialty produced documentary evidence about the negotiations, it was not aware of the circumstances surrounding the addition of the Designated Premises Endorsement to the 2012 Policy. (*Id.*)

Based on this record, Midwood has failed to demonstrate that the evidence it seeks to rely on is new. At the time it agreed to engage in motion practice over the coverage of the 2012 Policy, Midwood knew that the Designated Premises Endorsement was not included in the 2012 Binder. (Midwood Mem. 16.) Midwood also knew that it had not yet deposed its broker at All Risk, who negotiated the 2012 Policy on Midwood's behalf, or Illinois Union's underwriter, who approved the terms of the 2012 Policy, and that Midwood had not yet subpoenaed Partners Specialty, the intermediary between Illinois Union and Midwood. (*Id.*) Nevertheless, in opposing Illinois Union's summary judgment motion and in making its own motion, Midwood chose not to investigate the circumstances of the addition of the Designated Premises Endorsement, despite knowing of its absence from the 2012 Binder. Nor did Midwood seek affidavits from the individuals who negotiated the 2012 Policy on its behalf. Because Midwood knew that the Designated Premises Endorsement was not included in the 2012 Binder and because Midwood could have discovered the circumstances under which Illinois Union added

the Designated Premises Endorsement to the 2012 Policy, Midwood has failed to show that the evidence was not in its possession — the 2012 Binder was — and that the evidence could not be discovered through the exercise of reasonable diligence — it could have investigated the circumstances under which the Designated Premises Endorsement was added to the 2012 Policy by deposing its broker at All Risk or Illinois Union's underwriter or by subpoenaing Partners Specialty. Thus, Midwood has not met the standard for reconsideration of the 2014 Decision. *See Prestige Jewelry Int'l*, 2015 WL 8481873, at *2 (denying reconsideration based on new evidence where the evidence existed as of the time of the prior decision and "there [was] nothing extraordinary about the methods [p]laintiff used eventually to track down the" new evidence); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 340 (S.D.N.Y. 2012) (denying reconsideration because "the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver").

## 2.  Manifest injustice

Manifest injustice sufficient to reconsider a decision that is the law of the case cannot be shown by a party's failure to raise an argument that could have been raised prior to the initial decision. *See Official Comm'n of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (finding that the district court's denial of the plaintiff's motion for reconsideration was not "manifestly unjust" because the basis for reconsideration was an argument that the plaintiff could have raised prior to the district court's summary judgment decision and because the plaintiff was not entitled to "yet another bite at the apple" after it lost the prior summary judgment motion); *see also StreetEasy, Inc. v. Chertok*, --- F. App'x ---, ---, 2016 WL 3251877, at *2 (2d Cir. June 7, 2016) (finding that "[n]o manifest injustice would

result from declining to consider [the defendant's] new argument or depart from the law of the case" where the defendant could have raised the argument before the original order).

Midwood concedes that at the time it litigated the coverage of the 2012 Policy, it possessed the 2012 Binder and knew that the 2012 Binder did not include the Designated Premises Endorsement. (Midwood Mem. 16.) Midwood could have argued at that time that, because the Designated Premises Endorsement was not included in the 2012 Binder, it was not part of the 2012 Policy. Midwood nevertheless chose to litigate whether the Incident was covered under the terms of the 2012 Policy, based on its interpretation of the terms included in the 2012 Policy and the Designated Premises Endorsement, in effect conceding that the Designated Premises Endorsement was in fact part of the 2012 Policy. Because Midwood knew that the Designated Premises Endorsement was not included in the 2012 Binder and could have raised this argument prior to the 2014 Decision, Midwood has failed to establish that denying reconsideration of the 2014 Decision would result in manifest injustice. *See Official Comm'n of Unsecured Creditors of Color Tile*, 322 F.3d at 168; *StreetEasy*, --- F. App'x at ---, 2016 WL 3251877, at *2.

Accordingly, the Court declines to reconsider the 2014 Decision and, consistent with the law-of-the-case doctrine, denies Midwood's and All Risk's motion for partial summary judgment as to Illinois Union's claim that the Designated Premises Endorsement precludes insurance coverage of the Incident.

**III.  Conclusion**

For the foregoing reasons, the Court denies Illinois Union's motion for summary judgment as to Midwood's counterclaim for equitable estoppel.  The Court grants Illinois Union's motion for summary judgment as to Midwood's counterclaim for reformation and denies Midwood's cross-motion for summary judgment as to its counterclaim for reformation.  The Court declines to reconsider the 2014 Decision and denies Midwood's and All Risk's motion for partial summary judgment as to Illinois Union's claim that the Designated Premises Endorsement precludes insurance coverage of the Incident.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 30, 2016
          Brooklyn, New York